FRANCISCO ALMODÓVAR, demandante y recurrente, *v.* JUAN G. NOLLA, demandado y recurrido.

*Número:* 12650     *Resuelto:* 22 de junio de 1962

*Francisco M. Cadilla, Armindo Cadilla Ginorio, Lemuel Toledo, Rafael Buscaglia,* abogados del recurrente; *Francisco M. Susoni,* abogado del recurrido.

Sala integrada por el Juez Asociado señor Belaval como Presidente de Sala y los Jueces Asociados señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

Doña Mercedes Goitía viuda de Olmo, era dueña de la siguiente finca: Rústica, radicada en el barrio de Hato Abajo de Arecibo con una cabida superficial de 55.433 cuerdas,

colindando al norte, con tierras de Manuel Pérez, la carretera de Arecibo a Hatillo y terrenos del Pueblo de Puerto Rico donde está ubicada la Cárcel de Distrito; por el Sur, con el Río Santiago y terrenos de Andrés García; por el este, con terrenos de la Sucn. Pérez, Miguel Correa y el Río Santiago y por el oeste, con terrenos del Pueblo de Puerto Rico, la ferrovía de la American Railroad Company of Puerto Rico, tierras de Andrés García y Márquez Hermanos. Esta finca originalmente era de 42.94 cuerdas, pero medidas por el agrimensor señor Julió T. Martínez en el 1923, resultó con una cabida adicional de 12.48313 cuerdas, que sumadas a las 42.94 cuerdas dan una cabida de 55.42313 (t. 223–224).

En el 1925 doña Mercedes Goitía viuda de Olmo segregó de dicha finca rústica la siguiente parcela: Rústica: en barrio Hato Abajo, Arecibo, de nueve cuerdas con setenta y tres céntimos, más o menos, equivalentes a tres hectáreas, ochenta y dos áreas y cuarenta y tres centiáreas. Lindando al norte, con terrenos de El Pueblo de Puerto Rico y la Carretera número dos; al Sur, resto de la finca de la cual se segrega; Este, Urbanización Padilla; y al Oeste, vía de la American Railroad Company y el Pueblo de Puerto Rico; estando circunscrita dentro de los siguientes puntos: empezando en un punto en la parte Sur de la Carretera número dos, donde la propiedad de Mercedes Goitía se une con la del Pueblo de Puerto Rico, y desde dicho punto de partida en dirección Este, ciento sesenta y siete metros a lo largo del lado Sur de dicha carretera; de aquí rumbo Sur, cinco grados cuarenta minutos Este, ciento treinta y un metros; de aquí Sur, veinte grados veinte minutos Este, ochenta y tres metros; de aquí Oeste, doscientos diez y siete metros más o menos, al lado Este de la vía de la American Railroad Company; de aquí en dirección Noroeste, a lo largo de la lí-

nea Este de la vía de la American Railroad Company, ciento cuarenta y ocho metros más o menos, a un punto en la línea Sur de dicha propiedad de El Pueblo de Puerto Rico, que divide dicha pertenencia de las tierras de Mercedes Goitía, la distancia de sesenta y siete metros; de aquí rumbo Norte, ochenta y cinco metros más o menos al punto de partida, inscrita al folio 178 del tomo 134 de Arecibo, finca número 6016, inscripción primera. Esta porción de 9.73 cuerdas, más o menos, fue urbanizada por doña Mercedes Goitía viuda de Olmo, y hoy se conoce como Urbanización Olmo.

En el 1929, siendo todavía doña Mercedes Goitía viuda de Olmo, dueña, tanto del remanente de la finca de 55.433 cuerdas, como de la parcela de 9.73 cuerdas, más o menos, objeto esta última de la urbanización, segregó de la parcela de 9.73 cuerdas, más o menos, un lote de 16,490 metros que medía 79 metros cuadrados por su lado Norte; 209.25 metros por sus lados este y oeste y ciento cinco metros por su lado sur, lindando al norte con Vicente Aguirre, Carlos Mejías, Juan Canals y la carretera de Arecibo a Hatillo; al sur con la Avenida número dos de la Urbanización Olmo, prolongación de la Calle Nueva; al este con Concepción Pérez y solares de la Urbanización Padilla y al oeste la calle número dos de la Urbanización Olmo, inscrita al folio 99 del tomo 152 de Arecibo, finca 6772, inscripción primera.

Parece que originalmente, la finca de 55.433 cuerdas, en su totalidad estuvo hipotecada al Federal Land Bank of Baltimore, y que posteriormente, dicho banco estuvo conforme en liberar de su hipoteca la parcela de 9.73 cuerdas, más o menos, que forma la Urbanización Olmo, pues el lote de 16,490 metros que se separó de la parcela de 9.73 cuerdas, más o menos, y que forma la finca 6772, se le hipotecó a su vez a Félix Mauro Ginorio, conjuntamente con las fincas

6773, 6774, 6775 todas ubicadas en la Urbanización Olmo. Las partes en este litigio derivan sus títulos de las ejecuciones de ambas hipotecas. El remanente de las 55.433 cuerdas le fue adjudicado en pública subasta a Juan G. Nolla quien a la fecha de este litigio aparece todavía como dueño; el lote de 16,490 metros cuadrados, —finca número 6772—le fue adjudicado, entre otros y en pública subasta, a Félix Mauro Ginorio.

En cuanto a este último lote, sin contar las segregaciones hechas por cada propietario, mientras el lote le pertenece, Félix Mauro Ginorio le traspasa a Félix Mauro Ginorio hijo 13,892.25 metros cuadrados; Félix Mauro Ginorio hijo le traspasa a Francisco Román 13,079.75 metros cuadrados; Francisco Román le traspasa a José M. Toledo, 9,665.186 metros cuadrados y José M. Toledo le traspasa a Francisco Almodóvar, quien a la fecha de este litigio, aparece todavía como dueño, los mismos 9,665.186 metros cuadrados que el primero había adquirido.

En todas y cada una de estas operaciones la colindancia Sur del lote de 16,490 metros—"Avenida número 2, prolongación calle Nueva"—permanece inalterada en cuanto a su descripción. Asimismo en la cesión y traspaso de calles otorgada por Mercedes Goitía viuda de Olmo al Municipio de Arecibo, según escritura número 91 de 13 de mayo de 1929 ante el Notario Francisco M. Cadilla, se describen las calles número 2 y 3 de la Urbanización Olmo que corren de norte a sur, como empezando en la carretera número 2—(Arecibo Hatillo) "y terminando en la avenida número dos, prolongación Calle Nueva". Una representación gráfica, *grosso modo*, de dicha colindancia sur sería la siguiente:

HATILLO-CARRETERA NUMERO DOS-ARECIBO

AVENIDA NO. I

FERROVIA

CALLE TRES

CALLE DOS

FINCA 6772

CARRETERA MILITAR

Concepción Pérez

Finca 6775

Finca 6773

Finca 6774

Finca 8060

Finca 6901

Finca 6660

Parcela en Disputa

Prolongación Calle Nueva

AVENIDA NUMERO DOS

Casa Olmo

JUAN G. NOLLA

Los cinco bloques geométricos circundados al norte por carretera número dos, que corre de Arecibo a Hatillo, al sur por la Avenida Número Dos, prolongación Calle Nueva, al este por el desvío urbano de la Carretera Militar y al oeste por la ferrovía, forman lo que se conoce por la Urbanización Olmo, ubicada en las 9.73 cuerdas, más o menos, que fueron segregadas de la finca de 55.433 cuerdas de doña Mercedes Goitía viuda de Olmo.

Según alegó ante la anterior Corte de Distrito de Arecibo, el propio demandado recurrido Juan G. Nolla, la finca que él adquiere en pública subasta, por escritura número 109 de 4 de noviembre de 1935 ante el notario Gustavo Zeno Sama otorgada a su favor por el Alguacil de la Corte de Distrito de Arecibo don Francisco Miranda Martínez, tiene

la siguiente descripción: Rústica de 45.743 cuerdas, colindando al norte con la *Urbanización Olmo* y Concepción Pérez; al sur el río Santiago y terrenos de Andrés García; al este Sucn. Viñas y Manuel Pérez antes, hoy Miguel Correa y Concepción Pérez y al oeste la vía férrea de la American Railroad Co., Andrés García y Márquez Hnos. cuya descripción aparece en el Registro de la Propiedad al folio 4 del tomo 129 de Arecibo, inscripción 21.

Este pleito se produce porque al mensurar el demandado recurrido el remanente de la finca de 45.743 que adquiere, según la escritura de subasta, encuentra que sólo tiene 43.748 cuerdas y entonces toma todo el camino cubierto por la prolongación Calle Nueva y parte del bloque sur cercano al desvío de la Carretera Militar hasta completar 45.178 cuerdas (t. 46). Por otro lado la nueva mensura de los bloques geométricos ubicados en la segregación de 9.73 cuerdas, más o menos, arroja a favor de la Urbanización Olmo una cabida de 11.5317 cuerdas (t. 51 *in fine* y 52).

En cuanto a las partes se refiere, la porción en litigio se reduce a una porción de 5619.32785 metros cuadrados equivalentes a 1.4297 cuerdas, situada a todo lo largo del extremo sur del lote de 16,490 metros cuadrados segregado por doña Mercedes Goitía viuda de Olmo para hipotecarlo a Félix Mauro Ginorio y adquirido por éste en pública subasta mediante el procedimiento de ejecución de hipoteca que presentó el último contra la primera, y que después de las segregaciones y transmisiones de títulos antes reseñados, pertenece a Francisco Almodóvar.

Celebrada la vista del caso, el demandante produjo una extensa prueba documental y prueba testifical y el demandado descansó en ciertas aseveraciones contradictorias con su testimonio directo obtenidas durante el contrainterrogatorio del perito agrimensor Fusté y dos certificaciones expedidas por la Secretaría de Arecibo en cuanto a las fechas en que ambas partes habían recibido la posesión de las fin-

cas rematadas de manos del Alguacil de la Corte. La ilustrada Sala sentenciadora, al declarar sin lugar la demanda, llegó a la conclusión que habiendo resultado la porción del demandante con 1.8557 cuerdas más y habiendo resultado el remanente del demandado con una cabida de 2.169 cuerdas menos, le correspondía al demandante justificar tal apropiación, sin haberlo hecho; que el perito agrimensor Fusté, al declarar en favor del demandante había "puesto de relieve la razón del demandado en forma definitiva"; que por la inspección ocular había quedado convencido que los 5,619.32785 metros cuadrados forman un solo cuerpo de terreno con el resto de la finca del demandado y que sus colindancias con la parcela de 9.73 cuerdas son definidas y claras y determinables a la vista; que, por otro lado, le había llamado la atención al Tribunal que desde el 1ro. de marzo de 1944, la propiedad en litigio fuera traspasada cuatro veces, vendida sin que ninguno de sus compradores la hubiese poseído en momento alguno; que la inscripción en el Registro de la Propiedad de la porción de 5,619.32785 metros cuadrados por la antecesora en título del demandante (Mercedes Goitía viuda de Olmo) fue un error (porque) las nueve cuerdas segregadas de la finca principal fueron dedicadas a una urbanización (y) el desarrollo de un plan de urbanización conlleva el estudio y determinación de los solares y de las calles, de modo que cualquier exceso o falta es fácilmente determinable en proyectos de esta naturaleza; que no hay justificación para que esta inscripción tuviera que producirse en forma distinta a la de los otros solares de la urbanización, si el demandante está conteste en que la porción, objeto de este litigio, es parte de las 9.73 cuerdas que fueron totalmente urbanizadas. Hasta aquí las razones expuestas por la ilustrada Sala sentenciadora.

El hecho que la parcela de 9.73 cuerdas, poco más o menos, resultara de mayor cabida y el remanente de 45.743 resultara de menor cabida, no origina ningún estado de derecho que determine la resolución de este caso, aunque sea el

perito de la demandante quien haya establecido el aumento o disminución de los respectivos perímetros. Lo que determina la aplicación de la ley es que los dos cuerpos medidos estén comprendidos dentro de las colindancias descritas al momento de la venta, según veremos más adelante. El punto de partida de este estudio tiene que ser la descripción de la colindancia sur de la finca 6772, o sea, el bloque de los 16,490 metros cuadrados que adquiere, entre otros, Félix Mauro Ginorio. De la prueba se desprende que doña Mercedes Goitía viuda de Olmo hipotecó a Félix Mauro Ginorio, por escritura número 49 de 23 de marzo de 1929 ante el notario Francisco M. Cadilla, inscrita en el Registro de la Propiedad de Arecibo el 12 de abril de 1929, (t. 231–232) cuatro parcelas de la Urbanización Olmo inscritas como las fincas número 6772, 6773, 6774 y 6775. La finca 6772 constituye el bloque de 16,490 metros cuadrados a que hemos hecho referencia anteriormente.

La colindancia sur de la finca 6772, que a su vez constituye el referido bloque de 16,490 metros cuadrados, se describió desde un principio y se inscribió en el Registro de la Propiedad desde el 12 de abril de 1929, de la siguiente manera: Sur "avenida número 2 de la Urbanización Olmo, prolongación Calle Nueva". El exhibit 12 del demandante es una demostración gráfica elocuente del testimonio del perito agrimensor Fusté y contiene una reproducción exacta de la inscripción registral de la finca 6772. Pero ahí no termina la prueba del demandante sobre dicha colindancia sur de la finca 6772, que es donde enclava el predio en disputa. Los testigos Francisco Román Rodríguez, Manuel Román Alonso y José A. Agostini aclaran que la avenida número 2 de la Urbanización Olmo era una prolongación de la Calle Nueva.

El testigo Francisco Román Rodríguez declaró haber vivido en la Urbanización Olmo (t. 56); que conoce la colindancia sur por haber vivido por allí como diez años (t. 57); que la prolongación Calle Nueva empezaba cerca de la vía

del ferrocarril y seguía dirección inicialmente con la Calle Nueva y entonces a eso se le puso avenida número 2 prolongación Calle Nueva; la avenida 2 estaba hecha en parte (t. 57) ; que existía una alambrada en la prolongación Calle Nueva, y donde es la prolongación para los solares pasaba él por allí todos los días (t. 58). El testigo Manuel Román Alonso declaró que para el 1926, fecha en que vivía en la Urbanización Olmo, la avenida 2 empezaba en la vía del ferrocarril y terminaba en la Calle Nueva (t. 66) ; que para el 1926 había una parte de la calle número 2 (avenida) que estaba afirmada de piedra y la otra parte que no estaba afirmada pero por donde traficaba (transitaba) todo el mundo, un camino de tierra, una vía pública, avenida dos hasta la Calle Nueva, y por esa avenida "pasaba yo y todos los de la Calle Nueva, trabajadores de un taller y todo el mundo"; que a la parte sur de dicha avenida había unos alambres viejos (t. 66) (porque) había animales que comían y vacas que comían allí (t. 67) ; que en el 1936, cuando todavía vivía allí, vio unos trabajadores de Nolla poniendo alambres más al norte (t. 68) ; que ese camino desapareció al quitarse los alambres y sembrar cañas (t. 68).

El Ingeniero Civil José A. Agostini declara que desde el 1932 vivió en Arecibo por catorce años y que conocía la Urbanización Olmo (t. 69) ; que la Calle Nueva queda en parte de la Urbanización Padilla que hace colindancia con el ramal de la carretera ultimamente que se hizo, una carretera militar al oeste de la Urbanización Olmo; que conoció y conoce la avenida número 2 de la Urbanización Olmo y la prolongación Calle Nueva (t. 70) ; que la avenida número 2 venía frente a frente de la casa de Olmo y "que llegaba hasta una parada del tren, que llegaba hasta la vía y se queda esa urbanización ya hecha (y) tiene acera y encintado y después se prolongaba hasta la Calle Nueva que llegaba la avenida (número) 2"; que "después de la entrada de la casa de Olmo . . .. existía una prolongación de la avenida (número) 2 hasta la Calle Nueva" (t. 71) ; que en la prolongación

"había una palizada de maderas rolliza y alambres de púas y era la parte que se comprendía como avenida (número) 2"; que la prolongación Calle Nueva empieza en la carretera ramal militar, esa calle estaba asfaltada y es una prolongación de una calle hasta la parte arriba del pueblo de Arecibo y después muere por otra calle que no recuerda pero sube hasta un colegio católico (t. 72–73); que la cerca la estuvo viendo como 3 o 4 años después de la entrega por el señor Paco Román al señor José Toledo; que los terrenos al sur de la cerca eran propiedad del señor Nolla y al norte había un terreno que era continuación de la urbanización pero que no tenía casas ningunas (t. 73); que una vez fue designado por la Corte de Distrito de Arecibo (Tribunal Superior, hoy) para hacer una mensura de la Urbanización Olmo y fue acompañado por el Ingeniero Guillermo Martínez; que el testigo representaba al señor José Toledo y el Ingeniero Guillermo Martínez representaba al señor Nolla (t. 74); que fueron cogiendo todos los puntos relacionados con la mensura ésta y cuando llegamos a la calle 2 para coger la avenida 2 que es la avenida que llegaba hasta la Calle Nueva o sea prolongación Calle Nueva (punto X extremo suroeste del exhibit 12—plano de José A. Fusté—) Martínez le dijo que no porque eso no eran los puntos y entonces el testigo le contestó: "este es el punto que yo conozco y es el sitio que tengo que ponerlo y él no quiso ponerlo y no cerré el polígono" (t. 75); que de haberse cerrado el punto que el testigo sabía que era la colindancia sur de la Urbanización Olmo, la colindancia hubiera llegado hasta la prolongación de la Calle Nueva, en una línea recta calculando la Calle Nueva con la avenida 2 (t. 75); que si se hubiera cerrado el polígono en la forma que el ingeniero del señor Nolla quería hubiera cogido parte de la calle 2 más hacia la avenida; que de acuerdo con lo que el testigo creía y sabía, usando el plano éste (exhibit 12) el polígono hubiera cerrado en la prolongación Calle Nueva (t. 76).

Siendo esto así, no podemos concluir que la colindancia sur, según aparece en el exhibit 12 (plano de José A. Fusté), sea producto de una abstracción geométrica, y su vigencia jurídica una mera declaración registral. Examinados conjuntamente los antecedentes registrales, los planos trazados y los testimonios orales, no contradichos por prueba adversa, la única conclusión posible es que la colindancia sur de la finca 6772, que es donde está ubicada la porción en litigio, es la prolongación Calle Nueva según aparece del plano del señor Fusté (exhibit 12), y cualquier inferencia en contrario es claramente errónea.

El ilustrado Juez parece haber descansado en la inspección ocular que realizó del terreno, y el hecho observado, que la porción de terreno en disputa forma un solo cuerpo de terreno con el resto de la finca del demandado. El acto de apropiación de dicho terreno tiene lugar en el 1936 y la inspección ocular en el 1957, o sea, casi un cuarto de siglo después del acto de apropiación. Es indudable que una inspección ocular, en estas condiciones, no puede reflejar la situación existente en el 1929, que es el año cuando se realiza la segregación de la finca 6772 y la hipoteca de dicha finca, entre otras de la misma urbanización, a Félix Mauro Ginorio. La prueba demuestra que después del recurrido apropiarse de la parcela en litigio sembró caña en la misma, lo cual significa, que los signos naturales que generalmente se toman en consideración en las inspecciones oculares, habían desaparecido. La situación que hay que reconstruir en este caso, en virtud del Registro de la Propiedad, de los planos anteriores y de los testimonios verbales era la situación que existía en el 1929—fecha de la segregación—y en el 1935—fecha de la ejecución.

Contrario a lo expuesto por el ilustrado Juez, hay prueba en los autos que demuestra, que los anteriores dueños, durante el período de tiempo de la apropiación por el recurrido de dicho terreno, realizan gestiones para recobrar la posesión, presentan recursos de interdicto, de mensura por la

vía judicial, aparte de las gestiones extrajudiciales correspondientes. Uno de los adquirentes posteriores el señor Toledo trata de levantar un plano por medio del Ingeniero Civil José A. Agostini y no pudo conseguir ningún acuerdo y es una realidad que desde el 1944 se presenta la presente acción. Hay prueba, asimismo, en los autos que demuestra que el anterior dueño Félix Mauro Ginorio entró en posesión en virtud de título otorgado por el Alguacil de la anterior Corte de Distrito de Arecibo desde el 13 de enero de 1936 (t. 240) y el testigo Francisco Román Rodríguez, dueño posterior a Ginorio, declara que antes de la ejecución de la finca el 11 de octubre de 1935, como un mes antes, el señor Olmo le había entregado las fincas que iban a ser rematadas.

Contrario a lo expuesto por el ilustrado Juez, la antecesora en título doña Mercedes Goitía viuda de Olmo, nunca inscribió como finca separada la porción en litigio de 5,619.32785. Esa porción forma parte del lote de 16,490 metros cuadrados que se segregó y se inscribió en el 1929 como la finca número 6772 y que conjuntamente con las fincas 6773, 6774 y 6775, incluidas estas tres últimas en el lote situado entre las calles 2 y 3 de la Urbanización Olmo, según el plano de Fusté, fueron hipotecadas a Félix Mauro Ginorio.

Nada hay en la prueba que nos autorice a inferir que la señora viuda de Olmo cometiera alguna incorrección o error en la parcelación de la finca de 9.73 cuerdas más o menos. La urbanizadora prefirió dividir la finca en cinco lotes que abrían a dos calles verticales y una calle y dos avenidas horizontales, paralelas las últimas a la carretera número 2 que corre de Arecibo a Hatillo. En vez de fijar un número determinado de solares, decidió vender las parcelas por metros de acuerdo con la demanda en el mercado. No hay que olvidar que aún la finca segregada de 9.73 cuerdas, más o menos, se inscribe como finca rústica. La primera descripción como finca urbana de la Urbanización Olmo—finca 6038, —(t. 89) aparece inscrita el 21 de agosto de 1925 (t. 91–92). Para esta fecha todavía no regía en Puerto Rico el refina-

miento en el arte de urbanizar que ha traido nuestra planificación actual. El sistema de dividir por lotes y parcelar de acuerdo con el número de metros solicitados por el vendedor se efectúa en todos los lotes, desde el principio de la urbanización. El plano descriptivo del señor Fusté, en el cual constan todas las segregaciones menores del lote 6772, demuestra que tal sistema es perfectamente viable. Contrario a lo expuesto por el ilustrado Juez, todas las segregaciones de la finca de 9.73 cuerdas, más o menos, y todas las inscripciones en el Registro de la Propiedad fueron hechas de la misma manera. ■

Ahora bien, aclarada la cuestión de la colindancia sur de la finca 6772, tenemos el caso típico del cuerpo cierto de bienes, o sea, aquel cuerpo inmobiliario circundado por linderos claros y precisos—X Manresa—"Comentarios al Código Civil Español" 130 et seq. (5ta. edición Reus 1950) vendido por un precio alzado—primer supuesto del art. 1360 del Código Civil de Puerto Rico (1930)—31 L.P.R.A. 274, sección 3820 (1956), en cuyo caso la venta no queda alterada por ninguna reclamación en virtud de cualquier aumento o disminución de la cabida. ■

El hecho que la adquisición del terreno por cada parte se efectuara en virtud de una ejecución en subasta pública de la hipoteca sobre el terreno, no altera la situación jurídica: Sentencia del Tribunal Supremo de España de 12 de marzo de 1948; asimismo el hecho, aisladamente considerado, que la finca adjudicada al demandante, dentro de ciertos linderos claros y precisos, resultara de mayor cabida a la descrita entre tales linderos, y la finca adjudicada al demandado, dentro de ciertos linderos claros y precisos, resultara de menor cabida a la descrita entre dichos linderos, no origina ningún derecho en favor del demandado: Ex Parte *National City Bank of New York*, 53 D.P.R. 812 (Travieso) (1938), cita precisa a las págs. 816–817; *León v. Pérez*, 68 D.P.R. 890 (Todd hijo) (1948), cita precisa a la pág. 892. Este no es el caso en que podría obtenerse un resultado distinto

784

mediante el estudio del tracto regresivo—Sucesión válida de titulares—, según Nuñez Lagos—*Acción y Excepción en la Reivindicación de Inmuebles,* Instituto Editorial Reus, Madrid (1953), cita precisa a la pág. 30—o mediante el estudio de la posesión de las distintas parcelas, porque toda la finca original pertenece a un solo titular y la posesión de los primeros bloques, objetos de urbanización, dentro de ciertos linderos claros y precisos, está claramente establecida por la prueba. Como cuestión de realidad, la única interrupción en el hecho posesorio, se produce en la porción de la finca 6772 en disputa y se debe al acto antijurídico del demandado.

Por otra parte correspondía al demandado probar, contrario a lo establecido por la prueba del demandante, que la porción que él reclama estaba en posesión del demandante y no de cualquier otro colindante. ■

Habiéndose identificado la porción en disputa y fijado con precisión su situación, cabida y linderos; habiéndose establecido el título de dominio y que el demandado está en posesión de la porción en disputa, *Velázquez* v. *Velázquez,* 82 D.P.R. 619 (Blanco Lugo) (1961), cita precisa a la pág. 631; *Goglas* v. *Sucn. Massanet,* 60 D.P.R. 203 (Todd hijo) (1942), cita precisa a la pág. 207, *procede revocar la sentencia, declarar con lugar la reivindicación solicitada y ordenar al demandado la devolución inmediata de la siguiente porción de la finca 6772:*

*"Solar sito en la Urbanización Olmo, barrio Hato Abajo de Arecibo, con cabida de 5,619.32785 metros cuadrados, o sea, 1.4297 cuerdas, equivalentes a 56 áreas, 19 centiáreas y 32,785 miliáreas que se describen así: Partiendo del punto X situado en el lado Este de la Calle Número Dos, o sea la esquina Nordeste de la intersección que hace la referida Calle Número Dos con la Avenida Número Dos de la Urbanización Olmo, rumbo Norte 3 grados 17 minutos Oeste, y una distancia de 68.56 metros al punto Y, situado en el lado Este de la Calle Número Dos. De aquí y a lo largo de la colindancia de Luis Pérez y Jaime Barceló, rumbo Sur, 86 grados Este al punto Z, situado en el lado interior de la acera Oeste del Desvío Urbano. De aquí, y*

*a lo largo del lado interior de la referida acera, Sur 16 grados 16 minutos Este, y una distancia de 11.00 metros al punto A; De aquí Sur, 30 grados 9 minutos Este, y distancia 23.67 metros al punto B; de aquí, Sur, 35 grados 46 minutos Este, y distancia de 9.91 metros al punto C; de aquí Sur, 35 grados 6 minutos Este, y distancia de 16.45 metros al punto D; de aquí Sur, 42 grados 38 minutos Este, y distancia de 19.34 metros al punto E, donde termina la colindancia por el lado interior de la referida acera, e intersecta con el lado Norte de la Avenida Núm. 2, en la sección no construida de dicha avenida; y de aquí a lo largo del lado Norte de la Avenida Número Dos, Sur 86 grados 35 minutos Oeste, y distancia de 104.60 metros al punto X, donde dió comienzo esta descripción."*

determinada en el plano del señor José A. Fusté (exhibit 12 del demandante) *Arce* v. *Díaz*, 77 D.P.R. 624 (Belaval) (1954), cita precisa a la pág. 627.