# 97 DTA 97

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL I DE CAGUAS, HUMACAO Y GUAYAMA

ESTEFANIA LOPEZ MELENDEZ
Demandante-Apelada

v.

VICTOR LOPEZ MELENDEZ
Demandado-Apelado

Núm. KLAN-96-00146

San Juan, Puerto Rico, a 30 de abril de 1997

Panel integrado por su Presidente, Juez Rossy García
y los Jueces Pesante Martínez y Rivera Pérez

Rossy García, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El recurso instado en el caso de epígrafe interesa la revocación de una sentencia emitida el 16 de enero de 1996 por el Tribunal de Primera Instancia, Sala Superior de Guayama (Ramón Orta Berríos, J.). Mediante ésta, dicho foro declaró Con Lugar la demanda instada por la demandante apelada, Sra. Estefanía López Meléndez, peticionando la reivindicación de la propiedad inmueble objeto de controversia. Al así dictaminar concluyó, a base de la prueba documental que fue admitida por estipulación y la credibilidad que le mereció la testifical que aportó la demandante, *"que [ésta] es la dueña del predio de terreno objeto de [la] demanda por lo que procede la reivindicación".*

Resolvió, además, que *"el demandado actuó de mala fe al construir sobre el mismo a sabiendas que no le pertenecía".* Al tenor, ordenó el desalojo del demandado y la demolición, a su costo, de las estructuras por él edificadas en la propiedad de la demandante. Finalmente, le impuso al demandante las costas del proceso y la suma de $1,500.00 por concepto de honorarios de abogado. ■

Inconforme el demandado con dicho dictamen, interpuso el recurso que nos ocupa imputando la comisión de los siguientes errores:

*"1. Erró el Tribunal de instancia al declarar ha lugar la demanda radicada.*

*2. Erró de forma manifiesta el Tribunal de instancia en su apreciación y evaluación de la prueba presentada.*

*3. Erró el Tribunal de instancia al no requerir la acumulación de partes indispensables aun cuando se le planteó."*

Habiéndose perfeccionado el recurso luego de la presentación del correspondiente Apéndice Conjunto requerido por la Regla 37 del anterior Reglamento de este Tribunal de Circuito de Apelaciones y como parte de éste, la exposición narrativa de la prueba oral, nos encontramos en condición de dictaminar. Luego de un análisis de los alegatos presentados por las partes y los documentos incluidos en el Apéndice a la luz del derecho aplicable, resolvemos que no se cometieron los errores imputados y que resulta procedente emitir sentencia confirmatoria de la apelada.

Surge de los autos que ante las pretensiones del demandado-apelante, Sr. Víctor López Meléndez, quien alegadamente se posesionó ilegalmente de un predio de terreno propiedad de la demandante, ésta instó acción sobre reivindicación para recobrar la posesión y todo derecho sobre la propiedad objeto de controversia. Así, alegó, en lo pertinente, ser la titular de la finca que se describe en la demanda; que adquirió la misma mediante compraventa que fue consignada en Escritura Pública; así como que el demandado *"entró en posesión del predio [objeto de reivindicación]..., se posesionó ilegalmente de éste y desde hace unos meses ha venido poseyendo, cultivando y criando ganado en la propiedad de la demandante y hace dos meses levantó unas columnas en concreto para construir una casa sin título alguno que lo justifique, de mala fe y en contra de la voluntad manifiesta de la demandante quien le ha requerido en múltiples ocasiones que le entregue dicha propiedad todo ello infructuosamente".* A base de lo alegado y expuesto en la demanda, solicitó como remedio que se le declarara como *"la única dueña de la propiedad descrita...".* ■

14

Emplazado como fue, el demandado presentó su contestación a la demanda negando las alegaciones básicas de la demanda y levantó como defensas afirmativas, entre otras, la falta de partes indispensables las que nunca identificó hasta que acude en apelación ante esta curia ■ y que el predio *"que ahora reclama como suyo la demandante"* le correspondió en el sorteo a él y a su padre, *"ya que compraron en común pro indiviso"*. Solicitó así un pronunciamiento de sentencia a su favor declarando su derecho propietario sobre el cincuenta por ciento (50%) de la finca descrita en la demanda. ■

Definida como quedó la controversia y luego de una serie de incidentes procesales que resulta innecesario reseñar, la sala sentenciadora celebró la vista en sus méritos del caso el 27 de septiembre de 1995, en cuya ocasión las partes aportaron prueba testifical y documental en apoyo a sus respectivas contenciones.

Dirigiendo nuestra atención a la prueba que fue aportada por las partes, según relacionado en la Exposición Narrativa de la Prueba Oral sometida por estipulación, se desprende que los hechos pertinentes que originaron la controversia del caso que nos ocupa se remontan a una fecha anterior al 3 de marzo de 1979. En algún momento previo a esa ocasión la demandante apelada, Sra. Estefanía López Meléndez (Da. Estefanía), en unión a un grupo de familiares y vecinos del municipio de Salinas entre los que se encontraban su padre, su hijo, una hermana y una sobrina, acordaron la adquisición, en común pro indiviso, de la finca conocida como Majada Diez. Dicha propiedad estaba constituida por un predio de cincuenta (50) cuerdas de terreno sito en el Barrio Quebrada Yeguas de dicha municipalidad. Toda vez que en el momento los interesados no contaban con la totalidad del dinero para pagarla de inmediato, convinieron las partes en garantizar el pago mediante la constitución de una hipoteca sobre la misma. Para facilitar la transacción, y dado el hecho de que se trataba de un grupo de alrededor de catorce personas distintas, convinieron los compradores en que los esposos don Eugenio Rivera Santiago (don Eugenio) y doña Benicia López Meléndez --cuñado y hermana, respectivamente, de las partes aquí comparecientes-- figuraran como los compradores en la escritura que se otorgaría a tales efectos. ■ Surge asimismo, según los acuerdos por ellos alcanzados, que cuando los comuneros hubiesen pagado la totalidad del dinero que cada cual aportaría en proporción a su participación en la finca, o predio, el matrimonio de referencia procedería con la segregación y el otorgamiento de la escritura que investiría a cada uno de ellos con el correspondiente título de propiedad sobre su parcela. De igual forma, por ser el Sr. Rivera Santiago el que habría de fungir como dueño de la propiedad y el responsable del pago de la hipoteca, se delegó en éste el cobro de las aportaciones mensuales de cada uno de los comuneros para abonar al pago de la deuda por la cual él y su esposa habrían de obligarse.

Acordados como fueron dichos términos, el 3 de marzo de 1979 los esposos Rivera-López formalizaron la compraventa de la finca en cuestión otorgándose a tales efectos en dicha fecha la correspondiente escritura ante el Notario Gilberto Torres Flores. ■ Conforme a los términos de la referida escritura, dichos compradores realizaron la adquisición de la finca por el ajustado y convenido precio de treinta mil dólares ($30,000.00). Así, habiendo recibido la vendedora, Aguirre Corporation, la suma de ocho mil setecientos dólares ($8,700.00) en el acto del otorgamiento, ■ el precio aplazado de la finca objeto de compraventa quedó fijado en veintiun mil trescientos dólares ($21,300.00). Dicha cantidad habría de ser satisfecha mediante el pago de sesenta (60) plazos mensuales de cuatrocientos cuarenta y nueve dólares con noventa y cuatro centavos ($449.94), ■ incluyendo los intereses pactados. De esta manera, el pago mensual que debía realizar cada comunero para contribuir proporcionalmente a dicho pagaré quedó fijado en nueve dólares ($9.00) por cuerda. En consecuencia, cada uno vendría obligado a pagar veintisiete dólares ($27.00) por su parcela de tres (3) cuerdas, excepto dos de los comuneros cuyos lotes estaban compuestos de seis (6) y ocho (8) cuerdas, respectivamente. ■

Una vez formalizada la compraventa, los comuneros se reunieron para repartirse mediante sorteo los lotes, ■ ello de acuerdo a un plano preparado a esos efectos. Así, de la exposición narrativa de la prueba surge que en dicha ocasión, mediante el uso de dos fundas en las que se incluyeron, en una, los números de lote, y en la otra, los nombres de los comuneros, éstos procedieron a adjudicarse aleatoriamente a quién correspondería cada parcela. ■

En lo que respecta a la parcela que es objeto de controversia, surge de la exposición narrativa

estipulada que el testimonio de la demandante-apelada fue a los efectos de que en dicha ocasión metió la mano en la bolsa en tres ocasiones; una por ella, una por su padre y otra por su hijo. Atestó así que al meter la mano en el bolso para optar por su lote, le correspondió el número tres (3). Luego, y toda vez que en dicha ocasión su hijo, Orlando Rivera, se encontraba ausente del país, procedió a sacar el número de la parcela que habría de corresponderle a éste, obteniendo así el lote número 12, el que le fue adjudicado. También le correspondió optar por la parcela correspondiente a su padre, don Florencio López, quien para esa fecha contaba con ochenta y dos (82) años y no pudo estar presente en el sorteo. Al sacar el número de la parcela que habría de corresponderle, salió el Lote Núm. 13, el que le fue adjudicado.

· En lo que respecta a la intervención del demandado-apelante en el referido sorteo, surge de la exposición narrativa que a preguntas del juez de instancia declaró éste que *"[s]e enteró de la fecha del sorteo y estuvo en los alrededores, [no obstante lo cual] no pidió participar en el sorteo"*. ▮

Así las cosas, surge del testimonio de Da. Estefanía que la parcela que le tocó a don Florencio era *"empiná"*, y toda vez que éste no podía subir, por su edad, ella lo autorizó a sembrar en la parcela Núm. 3, la que le había sido adjudicada a ella, para que se entretuviera. Fue así como su hermano Víctor López Meléndez, aquí apelante, entró a la finca a trabajar con su padre. Así, *"[t]rabajaron la finca, construyeron una casucha [para guarecerse del sol y guardar las herramientas, y] sembraron variedad de frutos menores"*. ▮

De otra parte, declaró Da. Estefanía que los pagos mensuales que realizaba don Florencio, éste los hacía a través suyo para entregárselos a don Eugenio y que, al igual que ella, don Florencio *"la pagó tempranito"*, queriendo indicar que ambos saldaron cada una de sus parcelas antes de tiempo. ▮ Dicho testimonio acerca de cómo se hacía llegar el pago mensual a Don Eugenio fue confirmado por Don Víctor, quien, para justificar su titularidad sobre la mitad de la parcela en controversia, afirmó que aunque *"[p]agaba $13.50 él y $13.50 el padre, mensual...Don Flor pagaba mensualmente la finca entregándole el dinero a la hija"*. ▮

Con el transcurso del tiempo don Florencio enfermó, razón por la cual sólo don Víctor *"se quedó sembrando"* la parcela Núm. 3, falleciendo aquél eventualmente el 9 de abril de 1993. A raíz de dicho suceso, y aproximadamente siete (7) meses más tarde, el demandado-apelante, don Víctor, comenzó a construir una casa en la referida parcela, por lo que Da. Estefanía le llamó la atención indicándole *"que ese predio ella se lo había prestado a Don Flor pero [que dicha parcela] era de ella"*. Así, luego de repetirle lo mismo en varias ocasiones y ante la negativa de don Víctor de desocupar el predio, procedió ésta a instar la acción que culminó con el dictamen que es objeto del recurso que nos ocupa.

Surge también de la exposición narrativa que en ocasión de la vista testificó Alma Yadira Rivera López, sobrina de las partes en el caso de epígrafe y quien es maestra de profesión. Declaró ésta que es dueña de una de las parcelas, la que adquirió cuando se asoció con un grupo de personas, las que mencionó, ello para atestar que el apelante Víctor López no formaba parte del grupo. Declaró, además, que en el sorteo que por acuerdo entre el grupo se llevó a cabo, a ella le correspondió la parcela Núm. 2 y a la demandante-apelada la Núm 3, las que les fueron adjudicadas. ▮

Tales extremos fueron también corroborados mediante el testimonio del Sr. Eugenio Rivera, uno de los titulares, quien atestó que aun cuando se reunieron quince (15) personas para adquirir la finca de cincuenta (50) cuerdas, antes referida, la escritura se hizo a nombre de él y su esposa, habiéndose acordado que luego se distribuiría entre los integrantes del grupo a base de un sorteo por bolos. Declaró así que el Lote Núm. 3 le pertenece a la demandante Epifania López, habiéndole correspondido al padre de ésta, Don Flor López, el Lote Núm. 13. Luego de indicar a quién le correspondieron las restantes parcelas, atestó que el apelante Víctor López *"no participó en el sorteo ni le entregó dinero"*. ▮

Por su parte, el demandado-apelante atestó que entre su padre y él compraron tres cuerdas de terreno, pagando él la mitad de la suma acordada, así como que en el sorteo *"salió que a su padre le correspondía el predio tres"*. ▮

Finalmente, y en lo que respecta a la prueba documental, surge de los autos que el 7 de febrero de

1994, luego de una serie de incidentes que se hace innecesario reseñar, se otorgó la escritura de compraventa a favor de la demandante-apelada sobre el predio de terreno que le había sido adjudicado, o sea, el Lote Núm. 3, ello conforme a un plano de segregación preparado por el Agrimensor Rafael Díaz Ramos. ■■

Fue a base de la prueba antes reseñada que el foro de instancia, desmereciendo aquélla que fue aportada por el demandado, dio completo crédito a la prueba testifical de la parte demandante para, a base de ello, emitir el dictamen ahora apelado. Al concluir que *"la demandante es la dueña del predio de terreno objeto de esta demanda"*, dicho foro dejó consignado en sus determinaciones de hechos, en lo pertinente, como sigue:

*"La demandante, Doña Estefanía López Meléndez junto a otras personas a saber: Eugenio Rivera Santiago y su esposa Benicia López Meléndez, cuñado y hermana de las partes, Alma J. Rivera López, sobrina de las partes, Héctor Castro, Basilio Baerga, Julio Caratini, Pepe Aponte, Ramón Cardona, William Ortiz, Cándido, Orlando Rivera, Mr. Torres, y Flor Rivera, padre de las partes, se reunieron con el propósito de comprar en común pro-indiviso [sic] una finca de cincuenta (50) cuerdas de terreno denominada Majada Diez...Como no tenían el dinero completo acordaron dar un pronto cada uno y comprar la finca a nombre de Don Eugenio Rivera Santiago y doña Benicia López Meléndez con el compromiso de segregar la finca a razón de tres cuerdas y distribuirlas entre cada una de las personas.*

*Al [sic] 3 de marzo de 1979 se otorgó la Escritura Número 9 de Compraventa e Hipoteca a nombre del Sr. Eugenio Rivera Santiago y Benicia López Meléndez ante el Notario Gilberto Torres Flores. La finca fue inscrita en el Registro de la Propiedad de Guayama al folio 139, del Tomo 139 de Salinas, finca número 773, inscripción segunda. Al pagar la hipoteca Don Eugenio otorgaría las correspondientes escrituras.*

*El balance de la hipoteca se pagaría mensualmente, por lo que cada comunero le entregaría la cantidad de $9.00 por cuerda a Don Eugenio quien se encargaría de recoger el dinero todos los meses y efectuar el pago de la hipoteca. La demandante pagaba mensualmente el dinero perteneciente a su señor padre y el correspondiente al hijo... Mientras se pagaba la hipoteca se decidió adjudicar a cada uno de los comuneros el predio de terreno que le correspondería. Lo hicieron mediante un sorteo. La finca de cincuenta cuerdas se dividió en predios de tres (3) cuerdas y se le adjudicó un número a cada predio.*

*En el sorteo la demandante compareció en su carácter personal y en representación de su padre Don Flor López, quien no compareció por razón de su edad....De acuerdo al sorteo la demandante le correspondió el predio número tres (3) y a don Flor López le correspondió el predio número trece (13) en la parte alta que es un risco. De acuerdo a lo declarado, Don Flor López quería su predio para sembrarlo, llegar hasta el número trece (13), por lo que, la demandante le permitió sembrar en el predio que le fue adjudicado a ella, esto es, en el número tres (3).*

*El demandado, quien es hermano de la demandante empezó a sembrar junto a su padre Don Flor, en el predio número tres (3). Esto lo hicieron durante varios años hasta que Don Flor muere en el año 1992 [sic], [20] Al morir Don Flor, el demandado se quedó en el predio de terreno y comenzó a construir una estructura. Al enterarse la demandante, ésta le llama la atención y le requiere que desaloje el terreno porque le pertenece. Este se ha negado alegando que cuando Don Flor compró, él le dio la mitad del dinero por lo que es dueño de la mitad.*

*[E]l día 7 de febrero de 1994, Don Eugenio Rivera Santiago y Doña Benicia López Meléndez otorgaron a favor de la demandante la escritura Número 6 de Compraventa ante el Notario Telesforo Figueroa para consignar que la dueña del predio número tres (3) es la demandante. **En dicha escritura la cual fue estipulada por las partes**, se describe la finca de la siguiente manera:*

*"Predio de Terreno situado en el Barrio Quebrada Yegua de Salinas, Puerto Rico, con una cabida superficial de DOS PUNTO OCHENTA Y UNO NOVENTA Y CUATRO (2.81.94) CUERDAS, colindando por el Norte con Basilio Baerga Paravisini en ciento cuarenta y dos punto cuarenta y tres (142,43) metros; por el SUR con Alma Yadira López, en ciento veintinueve punto veinticinco (129,25)*

*metros; por el ESTE, con Cristino Medina, en setenta y nuevae [sic] punto ventitres (79,23) metros y por el OESTE con camino vecinal en ochenta y cuatro punto sesenta y dos (84.62) metros.*

*Dicha escritura no consta inscrita en el Registro de la Propiedad porque no se ha cumplido con los requisitos para la segregación de la finca original. La demandante pagó en su totalidad el predio número tres (3). **Dicho pago se acreditó mediante recibo de saldo estipulando [sic] también por las partes.** "* (Enfasis suplido).

Concluyó así, como cuestión de derecho, a base de la prueba admitida y de la credibilidad que aquella testifical le mereció, que *"el demandado jamás tendría una escritura del predio tres (3) ni de ningún otro predio porque simplemente el demandado nunca formó parte del grupo de personas que adquirieron la finca".* En consecuencia, dictaminó en su fallo *"que la demandante es la dueña del predio de terreno objeto de esta demanda por lo que procede la reinvindicación [sic]".*

Por los fundamentos que exponemos a continuación, resolvemos que ninguna razón meritoria se aduce para justificar nuestra intervención con la apreciación que de la prueba hizo el foro de instancia, por lo que resulta procedente emitir sentencia confirmatoria de la apelada.

## II

Nuestra Carta de Derechos reconoce como derecho fundamental del ser humano el disfrute de la propiedad, y que ninguna persona será privada de ésta sin un debido proceso de ley. Artículo II, Sección 7, Constitución del Estado Libre Asociado de Puerto Rico. Respecto del objeto de dicho derecho, apunta Vélez Torres citando a Puig Brutau, que el término propiedad indica toda relación de pertenencia o titularidad, la que *"se extiende, cubre y arropa a todo lo que es susceptible de derechos, afectando a cualquier partícula activa patrimonial, no importa su naturaleza corporal, incorporal, mueble, inmueble, fungible o consumible".* José Ramón Vélez Torres, *Curso de Derecho Civil,* T.II, San Juan (1992), pág. 64. ■ Al tenor, el contenido del derecho de propiedad conlleva las facultades de gozar, disponer y accionar para recuperar la cosa objeto de propiedad, como claramente surge de las disposiciones del Art. 280 del Código Civil de Puerto Rico, 31 L.P.R.A., sec. 1111, el que íntegra y textualmente define y autoriza que:

*"[l]a propiedad es el derecho por virtud del cual una cosa pertenece en particular a una persona con exclusión de cualquiera otra.*

*La propiedad concede el derecho de gozar y disponer de las cosas sin más limitaciones que las establecidas en las leyes.*

*El propietario tiene acción contra el tenedor y el poseedor de la cosa para reivindicarla."*

Al tenor, se ha interpretado que el contenido del derecho de propiedad tiene dos facetas: en un sentido positivo permite al propietario el aprovechamiento natural del rendimiento que corresponda a la naturaleza de la propiedad de que se trate, e igualmente la facultad de realizar sobre ella actos jurídicos de disposición. En su sentido negativo, le reconoce al propietario el derecho de excluir a los demás en evitación de que se interfiera o impida el uso, disfrute y disposición del objeto de su derecho. José Puig Brutau, *Compendio de Derecho Civil,* Vol. III, Ed. Bosch, Barcelona (1989), pág. 44. Acorde, y en lo pertinente, la acción reivindicatoria, cuya razón de ser emana del contenido negativo del derecho de propiedad, irá dirigida no sólo a la afirmación inicial de tal derecho, sino también a definir materialmente el objeto sobre el cual éste recae y a darle efectividad al derecho de disfrute y disposición, eliminando, de paso, todo acto material o jurídico realizado contra la afirmación del derecho o su efectividad práctica. *Id.,* a la pág 46.

Así, observamos que la acción reivindicatoria, mecanismo procesal a través del cual se ejerce el *ius vindicandi,* constituye la más eficaz y enérgica defensa de la propiedad, por cuya virtud el propietario de una cosa que ha sido privado de la misma se dirige contra quien la está detentando, sin pertenecerle, con el propósito de recobrarla. El ejercicio efectivo de dicha acción requiere la concurrencia de los siguientes requisitos: a) que el actor justifique su derecho de propiedad; b) que la acción se dirija contra quien tiene la cosa en su poder; c) que dicho poseedor contra quien se dirige esta acción de naturaleza real no pueda oponer ningún derecho que justifique su pretensión de retener

la cosa frente al propietario; o sea, que carezca de título de dominio; d) que la cosa objeto de la reivindicación sea debidamente identificada. José Puig Brutau, *supra*, págs. 46-47; Eduardo Vázquez Bote, *Tratado Teórico, Práctico y Crítico de Derecho Privado Puertorriqueño,* T. VII, Vol. I, Equity, San Juan (1991), págs. 324-325. (Enfasis suplido). Varios principios se desprenden de tal doctrina, así como de las disposiciones del Art. 280, *supra*, y de la jurisprudencia interpretativa, los que desglosamos a continuación. ■■

La acción reivindicatoria corresponde al propietario de manera exclusiva y aun cuando éste nunca hubiese llegado a tener la posesión de la cosa a reivindicarse. [23] El demandante así facultado debe probar que es el propietario de la cosa que reclama, si bien no es indispensable presentar un título escrito de dominio. De ser ese el caso, basta la prueba por cualquier otro medio, siendo norma clara que es en el reivindicante sobre quien recae la carga o el peso de dicha prueba. [24] Asimismo, surge que la legitimación pasiva en una reclamación reivindicatoria, o dicho de otro modo, contra quien va dirigida la acción, es la persona que tiene la posesión de la cosa sin que ostente derecho alguno que le faculte para poseer; y que siendo procedente la acción bajo estudio sólo para reclamar la cosa señalada de manera determinada y concreta sin que sea posible pedir otra de la misma especie y calidad, se hace absolutamente necesario comprobar su identidad reputándose cumplida tal exigencia cuando, como en el caso de autos, se precisa la situación, cabida y linderos del inmueble de que se trate. *Almodóvar v. Nolla,* 85 D.P.R. 771, 784 (1962). Acorde, el efecto obligado de la concurrencia de los requisitos aquí apuntados en una acción reivindicatoria será el pronunciamiento de la restitución al demandante de la posesión del objeto de su dominio, sentencia en la cual, además, estará implicada la liquidación de tal estado posesorio dependiendo de la buena o de la mala fe con que haya poseído el demandado. José Puig Brutau, *supra*, a la pág 50.

Veamos ahora, dentro de este marco jurídico, si se justifica la disposición por sentencia del foro apelado que declaró *"CON LUGAR la demanda [de reivindicación instada por Da. Estefanía] y en su consecuencia...orden[ó] a la parte demandada [Don Víctor López Meléndez] a desalojar la propiedad y a demoler toda estructura que haya construido en el mismo".*

## III

La demandante-apelada, Sra. Estefanía López Meléndez, en el ejercicio de la facultad que le confiere su cualidad de propietaria, según alegado en la demanda del caso de epígrafe, acudió al tribunal de instancia en solicitud de un pronunciamiento mediante el cual dicho foro afirmara su derecho de propiedad sobre el bien inmueble objeto de controversia, un predio con una cabida de aproximadamente tres (3) cuerdas de terreno. Para justificar tal derecho, dicha parte presentó ante la consideración de la sala sentenciadora la Escritura de Compraventa Núm. SEIS (6) otorgada el 7 de febrero de 1994 ante el notario Telesforo Figueroa, en la que se hace constar que el título de propiedad sobre el referido inmueble --este último segregado de una finca de mayor cabida-- recae exclusivamente sobre su persona.

Al así proceder, dirigió la acción incoada contra su hermano, el Sr. Víctor López Meléndez, quien alegadamente se había posesionado ilegalmente del aludido predio. ■■ Identificó, además, con especificidad, la parcela objeto de reivindicación, precisando su situación, cabida y linderos, ello según consignado en la escritura de compraventa y conforme al plano de segregación de la finca matriz preparado a tales efectos. Cumplió así con las exigencias y requisitos que deben estar presentes para el ejercicio eficaz de la acción reivindicatoria.

De otra parte, la demandante-apelante descargó el peso de prueba que le correspondía para prevalecer en su reclamo de derecho al establecer, a satisfacción del foro de instancia, su mejor derecho sobre la propiedad que era objeto de controversia. Desmereció así el foro de instancia el testimonio que aportó el aquí apelante al resolver, conforme a la prueba presentada por la demandante-apelada, que *"el demandado nunca formó parte del grupo que se reunió para adquirir la finca Majada Diez".*

Evidente resulta que al enfrentar la prueba documental y testifical presentada por la demandante, con aquélla aportada por el demandado-apelante, el foro de instancia resolvió todo conflicto dándole completo crédito a aquélla que aportó la demandante y desmereció aquélla aportada por el apelante. Con tal apreciación de prueba por parte del foro de instancia no habremos de intervenir.

Basta aquí con señalar que, de ordinario, los tribunales apelativos no intervienen con la apreciación que de la prueba hacen los foros de instancia. Es a éstos a quienes les corresponde pasar juicio sobre la credibilidad de los testigos ofrecidos por las partes. Tal apreciación de la prueba merece gran deferencia y debe prevalecer, en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto que nos mueva a intervenir. *Benítez Guzmán v. García Merced,* 126 D.P.R. 302, 308 (1990); *Pérez Cruz v. Hosp. La Concepción,* 115 D.P.R. 721, 728 (1984). Ante nos, los apelantes no han presentado argumento ni prueba alguna que demuestre lo anterior. La exposición estipulada de la prueba testifical y la prueba documental sometida por las partes en ocasión de la vista avalan las determinaciones de hecho del tribunal de instancia y sostienen ampliamente el dictamen que es ahora objeto de impugnación. En tales circunstancias ninguna razón o fundamento existe para intervenir con tal dictamen. Regla 43.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 43.2; *Rodríguez Cancel v. A.E.E.,* 116 D.P.R. 443, 451 (1985); Exparte Valencia, 116 D.P.R. 909, 912 (1986); *Rivera Pérez v. Cruz Corchado,* 119 D.P.R. 8, 14 (1987); *Benítez v. García,* 126 D.P.R. 302, 308 (1990); *Rodríguez Oyola v. Machado,* 137 D.P.R. ___ (1994), **94 J.T.S. 82,** pág. 12008; *Méndez v. Morales,* ___ D.P.R. ___ (1996), **96 J.T.S. 149,** pág. 347. Así, mereciéndonos entero respeto y deferencia el arbitrio del juzgador de hechos, quien avaló la suficiencia de dicho título mediante la apreciación y adjudicación de la credibilidad de la prueba testifical, y por estar contestes en que del análisis de la totalidad de la prueba considerada, el resultado al que llegó el foro apelado representa el balance más racional, justiciero y jurídico de la misma, ninguna razón o fundamento meritorio se nos ha ofrecido, ni lo encontramos nosotros, que nos permita intervenir justificadamente con el dictamen apelado.

Finalmente, y atendiendo el señalamiento de error referente al alegado defecto de partes indispensables, el mismo es totalmente frívolo e inmeritorio. Según ya indicado, la naturaleza de la acción reivindicatoria que contemplamos concede que un sólo comunero pueda instar dicha acción, de cuyos resultados se beneficiará toda la comunidad. Así, era innecesario que Da. Estefanía incluyera en la demanda de epígrafe, como parte indispensable, a su cónyuge don Policarpio Rivera Santiago. De otra parte, la misma tiene que ir dirigida contra quien se alega que ejerce ilegalmente la posesión sobre el bien a reivindicarse. Atinente a dicho requisito, resulta transparente que, por las propias admisiones del demandado, sólo él realizó los actos alegados de posesión y dominio sobre el predio en controversia, por lo que sólo contra él se hacía indispensable instar la demanda de epígrafe. Así, forzoso es concluir lo vano, inconsecuente e insustancial de dicho planteamiento, por lo que le negamos validez jurídica al mismo.

Resulta procedente, en consecuencia, emitir sentencia confirmando la apelada.

**IV**

Por los fundamentos antes consignados, se dicta sentencia confirmatoria de la apelada.

Lo acuerda y manda el tribunal y así lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 97 DTA 97**

**1.** Véase Sentencia Enmendada, Apéndice del recurso, págs. 19-20.

**2.** Véase Demanda de 1ro. de marzo de 1994, Apéndice del recurso.

**3.** Toda vez que dicha parte imputa tal falta en uno de sus señalamientos de error, discutiremos su procedencia más adelante. Las partes *"indispensables"* a las que se refiere en su escrito ante nos son *"los cónyuges de las partes";* véase Escrito de Apelación, pág, 3.

**4.** Véase Contestación a la Demanda, Apéndice del recurso, págs. 3-5.

**5.** Como parte vendedora compareció la Aguirre Corporation of Puerto Rico, representada en dicho acto por su vicepresidente y tesorero don Gustavo Enrique Luis Martín.

**6.** Dicha transacción quedó eventualmente *"inscrita en el Registro de la Propiedad de Guayama al Folio 139, del Tomo 139 de Salinas, finca número 773, inscripción segunda".* Véase Sentencia Enmendada, Apéndice del recurso, pág. 15.

**7.** Esta cantidad dada como pronto fue de igual manera prorrateada, por lo que cada uno de los comuneros cuyas parcelas constaban de tres (3) cuerdas, aportó alrededor de $550.00. Véase Exposición Narrativa, Apéndice del recurso, pág. 59-69.

**8.** Véase Escritura de Compraventa, Apéndice del recurso, págs. 31-35.

**9.** Estas eran aquellas que serían adquiridas por el Sr. Ramón Cardona, quien compró dos predios de tres (3) cuerdas cada uno, y la de la Sra. Rosín Torres, compuesta por ocho (8) cuerdas.

**10.** Según consta en los escritos de ambas partes y del testimonio de don Eugenio Rivera recogido en la exposición narrativa de la prueba.

**11.** Los únicos lotes que fueron asignados sin ir a sorteo fueron el Lote Núm. 1, de tres cuerdas, adjudicado a los esposos Rivera-López (en consideración a que sobre ellos recayó la responsabilidad de la deuda adquirida y las gestiones relacionadas), y el lote de ocho cuerdas que fue adquirido por doña Rosín Torres. Véase Sentencia Enmendada, Apéndice del recurso, pág. 16.

**12.** Véase Exposición Narrativa de la Prueba Oral, Declaración de Víctor López Meléndez, Apéndice del recurso, pág. 68.

**13.** *Id.,* Declaración de Da. Estefanía López Meléndez, pág. 60.

**14.** De hecho, surge de un recibo incluido en autos que Da. Estefanía saldó su finca mediante el pago de $2202.00, realizado el 1ro. de noviembre de 1979.

**15.** Véase Exposición Narrativa de la Prueba Oral, Declaración de Don Víctor López Meléndez, Apéndice del recurso, págs. 67-68.

**16.** Véase Exposición Narrativa, Apéndice Conjunto, a la pág. 63.

**17.** Vease Exposición Narrativa, Apéndice Conjunto, a la pág. 64.

**18.** *Id.,* a la pág. 67.

**19.** Véase Escritura de Compraventa, Apéndice Conjunto, págs. 49-52.

**20.** Surge de la declaración de Da. Estefanía que la muerte de Don Florencio ocurrió en abril de 1993. En el expediente no hay ningún otro documento que evidencie cuándo, en realidad, se verificó el suceso.

**21.** El derecho de propiedad que rige en nuestra jurisdicción está contenido en el Subtítulo 2 del Código Civil de Puerto Rico, 1930, 31 L.P.R.A. sec. 111 *et. seq.*

**22.** Véanse, en general, a José Puig Brutau, *supra,* a las págs, 46-50 y a Eduardo Vázquez Bote, *supra,* a las págs. 324-328.

**23.** La jurisprudencia española ha establecido que un copropietario puede ejercitar la acción en beneficio de la comunidad. Véanse Sentencias del Tribunal Supremo de España de 17 de junio de 1927, y la de 22 de enero de 1963 (Aranzadi, núm. 448), según citadas por Puig Brutau y Vázquez Bote, *supra,* a las págs. 47 y 336 (nota al calce núm, 24), respectivamente.

**24.** Al respecto, ha intimado el Tribunal Supremo que cuando falte algún principio de prueba escrita, para poder establecer la certeza de este hecho por prueba testifical es necesario que ésta sea robusta y completa, *Sucn. Collazo v. Pérez,* 19 D.P.R. 928 (1913), y que quien ejercita la acción reivindicatoria debe probar su derecho, sin que le sea dado para descansar su reclamación en la debilidad del título del adversario. *Sucn. Meléndez v. Almodóvar,* 70 D.P.R. 527 (1949): *Sucn. Arce v. Sierra,* 70 D.P.R. 841 (1949).

**25.** Véase Demanda, Apéndice del recurso, pág. 1.