B & W INVESTMENT CORPORATION, demandante y recurrente, *v.* LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR LOS ESPOSOS SIXTO NIETO GONZÁLEZ Y PROVIDENCIA GARCÍA, REPRESENTADA POR EL PRIMERO, demandados y recurridos.

*Número:* R-75-77      *Resuelto:* 23 de septiembre de 1975

*Luis Negrón López* y *Luis Negrón Lizardi,* abogados de la recu-
rrente; *E. Alcaraz Casablanca,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del
Tribunal.

La recurrente B & W Investment Corp., adquirió de la
recurrida Sociedad Legal de Gananciales compuesta por los
esposos Sixto Nieto González y Providencia García, una finca
situada en el barrio Sabanetas de Mayagüez, Puerto Rico. El
precio de compraventa—realizada por unidad de medida a
razón de tres mil dólares ($3,000.00) la cuerda y en orden a
una cabida registral de 83.271 cuerdas—ascendió a la canti-
dad de doscientos cuarenta y nueve mil ochocientos trece
dólares ($249,813.00) a ser satisfecha en diversos plazos
garantizados en varios pagarés hipotecarios.

En la escritura las partes consignaron expresamente que por razón de un deslinde realizado por el Departamento de Obras Públicas del Estado Libre Asociado de Puerto Rico en la zona marítima y la ribera del Río Grande de Añasco, rumbos Oeste y Norte de la finca, se desconocía el curso exacto de la colindancia de la finca con el Estado, acordándose que la compradora verificaría mediante mensura la cabida real, notificaría sus resultados a los vendedores por correo certificado con acuse de recibo, tras lo cual éstos tendrían un término de tres (3) meses para formular sus objeciones a dicha mensura. Se pactó claramente que el precio variaría directamente con la disminución o aumento de cabida resultante.

La compraventa se celebró el 13 de mayo de 1971, la notificación de la mensura y deficiencia en cabida se hizo en agosto de 1973,[1] y por el procedimiento antes descrito se solicitó el reajuste del precio el 28 de enero de 1974.

Ante la negativa de los vendedores a realizar el reajuste, el 28 de febrero de 1974 los compradores solicitaron del Tribunal Superior, Sala de Mayagüez, Sentencia Declaratoria que reconociera una deficiencia en la cabida real de la finca de 15.318 cuerdas y una reducción del precio, aplicable al primer plazo de cuarenta y cinco mil, novecientos cincuenta y cuatro dólares ($45,954.00).

La ilustrada sala sentenciadora, previa consideración y análisis de las alegaciones de la demanda, las cláusulas del contrato y los méritos de una moción de desestimación interpuesta, dictó sentencia contra la recurrente. El razonamiento para tal dictamen estuvo basado en que los términos pactados en la compraventa antes aludidos, no variaban ni alteraban los derechos reconocidos a un comprador conforme el Art. 1358 del Código Civil y que debido al ejercicio tardío de la gestión de mensura y notificación, la acción estaba prescrita

---

[1] Determinación de Hecho Número 2 consignada por el tribunal de instancia.

de acuerdo al Art. 1361 del referido cuerpo. Los artículos pertinentes rezan:

"Art. 1.358—La obligación de entregar la cosa vendida comprende la de poner en poder del comprador todo lo que exprese el contrato, mediante las reglas siguientes:

Si la venta de bienes inmuebles se hubiese hecho con expresión de su cabida, a razón de un precio por unidad de medida o número, tendrá obligación el vendedor de entregar al comprador, si éste lo exige, todo cuanto se haya expresado en el contrato; pero si esto no fuere posible, podrá el comprador optar entre una rebaja proporcional del precio, o la rescisión del contrato, siempre que en este último caso, no baje de la décima parte de la cabida la disminución de la que se le atribuyera al inmueble.

Lo mismo se hará aunque resulte igual cabida, si alguna parte de ella no es de la calidad expresada en el contrato.

La rescisión, en este caso, sólo tendrá lugar a voluntad del comprador, cuando el menos valor de la cosa vendida exceda de la décima parte del precio convenido." (31 L.P.R.A. sec. 3818.)

"Art. 1.361—Las acciones que nacen de los tres artículos anteriores prescribirán a los seis meses, contados desde el día de la entrega." (31 L.P.R.A. sec. 3821.)

A tal efecto, apoyó su decisión en los comentarios de tres distinguidos jurisconsultos españoles—Manresa, Castán y Scaevola—que respectivamente se manifiestan del siguiente modo:

"El plazo es el de seis meses, plazo breve en verdad, como lo requería la seguridad de la contratación que el Código debe procurar, la cual no consiente que la eficacia de las transacciones quede durante largo tiempo pendiente del ejercicio de acciones rescisorias. La naturaleza de los hechos que dan motivo a esas acciones impone asimismo la brevedad del plazo, pues para averiguar si la finca tiene o no la cabida estipulada, si es de la clase pactada o si se ha hecho la entrega de todo lo contenido dentro de los linderos, no es menester que transcurra mucho tiempo. Generalmente, en el momento de la entrega suelen ponerse en claro todos estos puntos; por eso precisamente el plazo de seis meses empieza a contarse desde el día de la entrega."

. . . . . . . .

"Las exigencias de la seguridad de la contratación justifican la brevedad del plazo."

. . . . . . . .

"Ya los jurisconsultos Troplong, Aubry et Rau y Guillemard entendían que el plazo de un año fijado en el Código Francés no presentaba una verdadera prescripción sometida a las causas ordinarias de suspensión, tales como las de interdicción, minoridad, etc., sino más bien un plazo de caducidad el cual, una vez transcurrido, impedía el ejercicio de la acción. Y como nuestro precepto de carácter especial, al señalar una acción rescisoria, también especial, no solo fija el tiempo de ésta, sino la manera de computarlo para todos los casos a que sea aplicable."

Concluyó que ". . . la ley, según ha sido comentada, no solamente es clara sino que tanto los comentarios de Manresa como los de Castán llevan a nuestro ánimo la impresión de que el principio jurídico contenido en el Art. 1361 al fijar un período prescriptivo está revestido de un interés público que posiblemente haría nulo cualquier acuerdo extendiendo el plazo fijado por dicho artículo."

No podemos convenir con el razonamiento de la ilustrada sala sentenciadora. De ordinario, el término de seis (6) meses será el determinante a los fines del ejercicio de una acción por aumento o disminución de cabida. La certeza de las transacciones justifica y hace aconsejable tal interpretación, pues no puede dejarse al arbitrio exclusivo del comprador la facultad de ejercitar *ad infinitum* la acción rescisoria que el Art. 1358 reconoce si la deficiencia en cabida excede una décima parte.

Sin embargo, la situación fáctica y jurídica en el caso de autos es distinta. La cláusula cuarta de la Escritura, en lo pertinente, lee como sigue:

"El monto total de la VENTA, al precio establecido de TRES MIL DOLARES ($3,000.00) por cuerda, se ajustará conforme a dicha cabida real. Cualquier aumento o disminución del monto total que resultase de este ajuste se consignará como un aumento

o disminución en la porción del precio, *cuyo pago ha sido aplazado haciéndose el ajuste mediante la variación correspondiente en el primer plazo del precio aplazado* que se indica en el hecho QUINTO siguiente, disponiéndose que *el pagaré representativo del primer plazo del precio aplazado no será negociable hasta tanto se verifique el ajuste en la cuantía del capital de la deuda;* disponiéndose además, que para cualquier aumento o disminución en la cuantía de los intereses pagados se hará el ajuste correspondiente en el próximo o próximos plazos de intereses luego de verificada la cabida real de la finca. Se aclara también que todos los ajustes que sean necesarios hacer en cuanto a cabida, cuantía de la deuda principal, de sus intereses y/o forma de pago, se harán constar en un Acta Aclaratoria de esta escritura que las partes comparecientes se obligan a otorgar de ser necesario luego de la verificación de la cabida real de la finca." (Énfasis suplido.)

Su lectura pone de manifiesto que las partes, conscientes desde un principio del deslinde realizado por el Estado, y consecuentemente de la realidad y existencia de una cabida diferente insertaron una cláusula en el contrato para proveer específicamente en cuanto a la mensura de la finca, otorgando expresamente al comprador la facultad de verificar la cabida. Es significativa tal inclusión, ya que tratándose de una facultad conferida a todo comprador por el Código Civil, su inclusión era innecesaria y constituiría normalmente, un acto inútil. No podemos atribuirle tal conducta a las partes. Un examen detenido del contrato, a la luz del Código, nos revela la verdadera razón de ser de la cláusula y nos convence de que la misma—más que una mera repetición mecánica de la ley como entendió el tribunal a quo— sacó las prestaciones del ámbito de los preceptos legales citados. Ante la regla del Código que otorga al comprador la opción de pedir una disminución en el precio o la rescisión del contrato dependiendo ésta última del monto de la reducción en cabida que resulte de la mensura, en el caso de autos, la recurrente, como compradora renunció la alternativa de rescindir la transacción aceptando la menor cabida resultante

con la deducción en el precio convenido. Siendo ello, así, no ha de aplicarse el ratio expuesto por los comentaristas citados respecto a la brevedad del plazo, en orden a la seguridad de la contratación para evitar que la eficacia de las transacciones quede durante largo tiempo pendiente al ejercicio de la acción rescisoria. Tan conscientes estaban las partes de la situación, que a los fines de no afectar a terceros se pactó que el pagaré representativo de dicho primer plazo no sería negociado hasta tanto se verificara el ajuste en la cuantía del capital adeudado. Los preceptos mencionados no impiden un pacto especial de los contratantes indispensable para identificar los verdaderos objetos y causa del contrato.

¿Cuál fue la causa de tal renuncia o el *quid pro quo* de la misma? La contestación a esta interrogante se desprende del contrato. Veamos.

En primer lugar, de la cláusula cuarta antes transcrita surge que cualquier cambio en el precio, derivado de la variación en cabida, se haría al momento del pago del primer plazo, el cual vencía a los 32 meses de la firma de la escritura. Asimismo, "que para cualquier aumento o disminución en la cuantía de los intereses pagados se har[í]a el ajuste correspondiente en el próximo o próximos plazos de intereses luego de verificada la cabida." Los intereses se vencían mensualmente.

De las anteriores disposiciones contractuales, concluimos que la intención de las partes fue que el ajuste en los intereses pagados se hiciera luego de la mensura, antes de o al momento del ajuste en el precio, el cual a su vez se haría al vencimiento del primer plazo. Entendemos que este término constituye el plazo límite para la realización de la mensura. (²)

---

(²) Al hacerlo, tenemos presente que el error al expresarse la cabida en el contrato no debe favorecer al vendedor, que es el dueño, y que por ende es de presumirse que está al tanto de lo que tiene. *Rosa Valentín* v. *Vázquez Lozada*, 103 D.P.R. 796 (1975).

El caso de *Ruidíaz Barrios* v. *Salas*, 103 D.P.R. 922 (1975) es distinguible al caso de autos tanto fáctica como jurídicamente.

■ En su consecuencia, no es aplicable al caso de autos el Art. 1358 y por ende no entra en juego ni es determinante la disposición relativa del ejercicio del derecho durante los primeros seis (6) meses, pues estamos ante una acción de cumplimiento específico de contrato en el cual las partes pactaron, por propia iniciativa, el método a seguirse para determinar y satisfacerse recíprocamente las obligaciones surgidas del conocimiento previo existente de la deficiencia en cabida.

Como señala Manresa la única justificación para la existencia en el Código de los artículos en cuestión, no aplicables al caso de autos, es suplir la voluntad de las partes en ausencia de pacto. (³)

"Una de las funciones de la ley civil en orden a la materia de contratos, *es procurar la estabilidad de los mismos sin merma de los derechos de nadie y sin invadir la esfera propia de la libre iniciativa de los contratantes*. En justo ejercicio de esta función, cuando en los términos de un contrato se encuentra alguna falta de determinación de la voluntad de las partes que no afecta a lo esencial, a la causa del contrato; cuando las circunstancias de hecho se desvían algo de aquellas que los interesados previeron al pactar, la ley tiende generalmente, si consideraciones de otra índole no lo impiden, a la eficacia, a la trascendencia jurídica del contrato, a su estabilidad. Para ello instituye reglas útiles, *al objeto de presumir cuál ha sido la voluntad, que no llegó a determinarse, de las partes; cuál hubiera sido esa misma voluntad si los contratantes hubiesen conocido esas nuevas circunstancias de hecho,* y, en último término, acude a la equidad, que es el derecho mismo, para que los fines de la relación jurídica creada se logren y el desenvolvimiento de la vida del derecho no tenga entorpecimiento ni retrasos.

Pues bien; esto es lo que hace el Código en los artículos que comentamos. En las ventas de inmuebles, hechas a razón de un

---

(³) Estos artículos, ". . . pueden ser derogados por mutuo acuerdo de los contratantes, si bien el alcance de la derogación en caso de contienda será apreciado por los tribunales." Badenes Gasset: *El Contrato de Compraventa;* tomo I, pág. 555 (1969) ; Vol. I, Manresa, *Código Civil Español,* tomo X, pág. 246 (1969).

precio por unidad de medida o número, cuando la cabida resulte mayor o menor que la estipulada, *hasta donde al Código es posible, interpreta la voluntad de los contratantes;* consigna preceptos de equidad, y sólo cuando motivos poderosos lo exigen, autoriza el desistimiento del contrato o el ejercicio de acciones rescisorias." Manresa, *op. cit.,* págs. 240–241. (Énfasis suplido.)

Es en respeto al conocimiento que las partes tenían del deslinde realizado por el Estado y a la resultante diferencia en cabida que de ello emanaba, que interpretando la voluntad de éstas, debemos reconocer la validez de la causa de acción de la recurrente.

*La sentencia del Tribunal Superior, Sala de Mayagüez, será revocada.*