EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Marilú Ramírez Quiñones, Juan Feliz Delgado, et al | |
|---|---|
| Recurrida | Certiorari |
| v. | 2006 TSPR 100 |
| Awilda Soto Padilla y Ferdinand Morales | 168 DPR _____ |
| Peticionarios | |

Número del Caso: CC-2005-598

Fecha: 14 de junio de 2006

Tribunal de Apelaciones:

Región Judicial de Caguas

Juez Ponente:

Hon. Carmen A. Pesante Martínez

Abogado de la Parte Peticionaria:

Lcdo. José A. Morales Arroyo

Abogado de la Parte Recurrida:

Lcdo. Luis E. Laguna Mimoso

Materia: Deslinde

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Marilú Ramírez Quiñones,
Juan Feliz Delgado, *et al*

    Recurrida

       v.

                         CC-2005-598

Awilda Soto Padilla y
Ferdinand Morales

    Peticionarios

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 14 de junio 2006

El recurso de epígrafe nos brinda la oportunidad de examinar los artículos 1358-1361 del Código Civil, en cuanto reglamentan el problema de la cabida en la compraventa inmobiliaria. Debemos precisar el alcance de dichos artículos y su relación con las acciones de reivindicación y deslinde.

Resolvemos, entre otras cosas, que los artículos 1358-1361 reglamentan la discrepancia debida al error entre la cabida de los inmuebles pactados en una compraventa y su real cabida. También aclaramos que la reducción del precio obtenida al amparo de dichos artículos no impide necesariamente la posterior acción reivindicatoria que pretenda el comprador.

## I.

Awilda Soto Padilla y Ferdinand Morales ("Soto-Morales") solicitan una determinación de que cierta demanda presentada en su contra debió desestimarse sumariamente.

Los peticionarios y demandados, Soto-Morales, compraron y adquirieron de Salvatierra Development, el 25 de febrero de 1988 y mediante la escritura pública número 59 otorgada ante el notario Rubén Rivera Vera, una residencia en el número E-6 de la urbanización Salvatierra de San Lorenzo. Dicho instrumento contiene la siguiente descripción del inmueble:

> URBANA: Solar Número Seis (6) del Bloque "E" de la urbanización SALVATIERRA…compuesto de [450 metros cuadrados], en lindes por el Norte, con el solar número E-Cinco (E-5) de la misma urbanización en una distancia de treinta metros lineales (30.00); por el Sur, con el solar E-Siete (E-7) de la misma urbanización, en una distancia de treinta metros lineales (30.00); por el Este, con la calle número dos (2) de la misma urbanización en una distancia de quince metros lineales (15.00); y por el Oeste, con el solar número E-Once (E—11), en una distancia de quince metros lineales (15.00).
>
> CONSTA INSCRITO al folio 25 del tomo 227 de San Lorenzo, finca número 11,854.

El precio de compraventa fue $42,000. Apéndice de la *Petición de Certiorari* ("Apéndice I"), págs. 13-18.[1]

Mediante escritura pública con fecha de 31 de enero de 1995, que fue la número 45 otorgada ante el notario Benjamín Rodríguez Ramón, la recurrida Marilú Ramírez

---

[1] Observamos que la copia en autos de la referida escritura está incompleta, pues falta su página número 6 (de aparentemente 7 páginas).

Quiñones compró y adquirió de Future Lands Developers, Inc., el referido solar E-5 de la urbanización Salvatierra. Se describió el inmueble así:

> URBANA: Solar número Cinco (5) del Bloque "E" de la Urbanización Salvatierra…compuesto de [450 metros cuadrados], en lindes por el Norte, con la calle Número dos (2), en una distancia de Quince Metros (15.00); por el Sur, con el Solar E-12, en una distancia de Quince Metros (15.00m.); por el Este, con el Solar E-6, en una distancia de Treinta Metros (30.00 m.); y por el Oeste, con el Solar E-4, en una distancia de Treinta Metros (30.00 m.).
>
> …
>
> Consta inscrito al folio 20 del tomo 22 de San Lorenzo, finca número 11,853.

También surge de la escritura, *inter alia*, que "la compraventa se efectúa por el convenido y ajustado precio de . . . $59,825"; que la propiedad se vendió y transmitió "con todo lo que le es anejo y le forma parte, con todos sus derechos, edificaciones y accesiones, y en las condiciones en que dicha propiedad se encuentra, o sea en 'as-is conditions'"; que la vendedora se obligó al saneamiento por evicción; y que la vendedora había adquirido el inmueble mediante una venta judicial. Apéndice del *Memorando en Oposición a Expedición de Certiorari* ("Apéndice II"), págs. 36-41.

El mismo 31 de enero de 1995, la señora Ramírez Quiñones hizo una declaración jurada de los siguientes hechos: que había adquirido mediante compraventa la residencia E-5 de la Urbanización Salvatierra; que el precio pactado originalmente era $60,455.00; y, que la vendedora le hizo una rebaja de $630.00, "por razón de que

existe una merma en la cabida del solar de Veintiún Metros Cuadrados (21.00_m/c)", siendo el precio de compraventa $59,825.00. Luego expresó que, debido a esta rebaja, no tenía reclamación que formular contra la vendedora por disminución de cabida. Pero se reservó "el derecho de reclamar contra cualquier colindante que le haya usurpado el número de metros de terreno que representa la merma antes mencionada." Apéndice I, pág. 20.

Así las cosas, Marilú Ramírez Quiñones, Juan Feliz Delgado y la sociedad legal de gananciales entre ellos ("Ramírez-Delgado"), presentaron una *Demanda* contra los peticionarios, Soto-Morales, el 27 de mayo de 2004. Solicitaron que el Tribunal "[o]rdene la remoción de la verja mal colocada y la construcción de la verja en la colindancia." Apéndice I, págs. 56-57.[2]

Los peticionarios contestaron la demanda y presentaron luego una *Moción en Solicitud de Sentencia Sumaria*. En ésta alegaron que no existía controversia con respecto a los hechos relevantes.[3] Adujeron que, tratándose de una

---

[2] Los demandantes alegaron, *inter alia*, que habían tenido problemas con la colindancia entre los dos solares; que la controversia había provocado innumerables vistas en los tribunales; que los demandantes habían denunciado a los demandados por alteración a la paz y amenaza; que dicho pleito terminó con una "transacción" a los efectos de que las denuncias se dejarían sin efecto y se permitiría a los demandantes "medir y entonces levantar las verjas en el lugar donde correspondería la colindancia"; que hecha la agrimensura y al comenzar la remoción de la verja existente, comenzaron nuevamente los insultos, las amenazas, y las visitas a los tribunales. *Id.*

[3] Específicamente, alegaron que no existía controversia sobre lo siguiente: la titularidad de las partes sobre los

venta por unidad de medida o número, el artículo 1358 del Código Civil, 31 L.P.R.A. § 3818, impedía que la demandante Ramírez Quiñones recuperara de sus colindantes los 21 metros cuadrados, pues al aceptar una reducción en el precio pactado, la recurrida "pagó por los metros que tiene en su solar". Apéndice I, págs. 8-11. Añadieron que, tratándose de una acción reivindicatoria, procedía su desestimación porque los demandantes carecen de título y los demandados "han poseído pública, pacífica y concepto de dueño de terrenos dentro de sus linderos (verjas) por espacio de dieciséis (16) años." Apéndice I, págs. 11-12.

El foro de instancia --con el beneficio de una *Réplica* de los demandantes-- declaró no ha lugar la referida *Moción*. Destacó en su *Orden* que la demandante Ramírez Quiñones se había reservado el derecho de reclamar contra los colindantes y que existía una controversia sustancial de hecho sobre "si le perjudica a la demandada o no, la disminución de la cabida para la demandante." Apéndice I, pág. 7.

Tras una moción de reconsideración, los peticionarios y demandados acudieron oportunamente al Tribunal de

---

solares E-5 y E-6; sus descripciones registrales; que la recurrida Ramírez Quiñones era consciente, al comprar el solar E-5, que éste había sufrido una merma de 21 metros cuadrados en su cabida; y que dicha compradora aceptó y recibió del vendedor una reducción del precio de compraventa proporcional a la reducción de cabida. Estas aseveraciones las apoyaron con la referida declaración jurada de Ramírez Quiñones. Alegaron, también, que de "la propia descripción de la propiedad adquirida se desprende que la venta se realizó con expresión de la cabida del inmueble a razón de un precio por unidad de medida."

Apelaciones mediante recurso de *certiorari*. El foro *a quo* denegó la expedición del auto solicitado. Expresó en su *Resolución*, entre otras cosas, que el tribunal de instancia no incurrió en un abuso de discreción, pues resolvió correctamente que "hay controversia sobre si la disminución de cabida de 21 metros cuadrados que pretende la parte recurrida sobre el terreno propiedad de Soto Padilla y Morales efectivamente les puede perjudicar o no." Apéndice I, págs. 75-87.

Insatisfechos con la *Resolución* del foro intermedio, los demandados acudieron ante nosotros mediante recurso de *certiorari*. Señalaron que "[e]rró el foro de instancia al negarse a dictar sentencia sumaria a favor de los peticionarios en el presente caso." Emitimos a la parte demandante y recurrida una orden de mostrar causa por la cual no debíamos expedir el auto solicitado y revocar la determinación del Tribunal de Apelaciones. Dicha parte compareció, por lo que estamos en posición de resolver y procedemos a ello.

## II.

La controversia entre las partes se reduce a si los demandantes y recurridos tienen el dominio sobre determinado terreno. Su jurídica resolución exige un análisis del contrato de compraventa y de las acciones de deslinde y reivindicación. Comenzamos con la compraventa.

## A.

El dominio se adquiere de varias formas, entre ellas "por consecuencia de ciertos contratos mediante la

tradición." Artículo 549 del Código Civil, 31 L.P.R.A. §
1931; véase, también, artículo 1048 del Código Civil, *ibid.*
§ 3012. Así establece el Código Civil la consabida
doctrina de título y modo.[4]

Si bien es título todo negocio jurídico obligacional
que sirva de base para la transferencia de un derecho real,
se destaca entre ellos la compraventa, que es un contrato
consensual, oneroso y bilateral, cuyo propósito es servir
de base para la transferencia del dominio sobre bienes
muebles e inmuebles. Véase: J. Castán Tobeñas, *Derecho
civil español, común y foral*, 12ma ed., Madrid, Reus, 1985,
T. 4, págs. 65-66; L. Díez-Picazo y A. Gullón, *Sistema de
Derecho Civil*, 6ta ed., Madrid, Ed. Tecnos, 1989, Vol. II,
pág. 280; J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da
ed., Barcelona, Bosch, 1982, T. II, Vol. 2, págs. 122-123;
E. Vázquez Bote, *Tratado teórico, práctico y crítico de
derecho privado puertorriqueño*, Oxford, New Hampshire,
Equity, 1992, págs. 148-149. Por supuesto, la doctrina de
título y modo implica que una compraventa perfeccionada no
basta para transferir el dominio, sino que genera
obligaciones de carácter personal: la obligación del
comprador de pagar y la del vendedor de entregar y sanear
la cosa objeto del contrato, según los artículos 1350 y

---

[4] El título es un negocio jurídico obligacional que sirve de
base para la transferencia de un derecho real. El modo o
tradición es un traspaso posesorio cuya intención es
transferir el dominio. L. Díez-Picazo y A. Gullón, *Sistema
de Derecho Civil*, 2da ed., Madrid, Tecnos, 1981, Vol. III,
pág. 77; J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da
ed., Barcelona, Bosch, 1971, T. III, Vol. 1, pág. 340.

1389 del Código Civil, *supra* §§ 3801 y 3871.

**B.**

El propósito de la compraventa, que es la transferencia del dominio, puede verse frustrado por varias razones, entre ellas el problema que atienden los artículos 1358-1361 del Código Civil, 31 L.P.R.A. §§ 3818-3821 ("artículos 1358-1361"). Estos regulan, de forma dispositiva, la discrepancia debida al error entre la cabida o calidad pactada en una compraventa inmobiliaria y la cabida o calidad fáctica.

El propósito de los artículos 1358-1361 es procurar la estabilidad de los contratos mediante reglas que suplen la intención de las partes. Hemos señalado, citando a Manresa, que dichos artículos responden a la función general de "procurar la estabilidad de los [contratos] sin merma de los derechos de nadie y sin invadir la esfera propia de la libre iniciativa de los contratantes." *B & W Investment v. Soc. de Gananciales*, 104 D.P.R. 152, 159 (1975). Ello se logra mediante reglas cuyo contenido refleja una presunción sobre cual hubiera sido la intención de los contratantes, presunción que deriva, en última instancia, de la equidad. *B & W Investment v. Soc. de Gananciales*, *supra*. No empece la referencia al concepto de equidad, cabe subrayar que la tarea de los preceptos es remediar la ausencia de intención, no hacer equidad.

El texto de los artículos 1358-1361 revela que atienden una discrepancia entre la cabida pactada y la que se ha entregado u ofrecido. Ahora bien, la doctrina

española sugiere que dichos artículos aplican a una modalidad particular de esta discrepancia. Se trata de una divergencia entre la cabida pactada y la que realmente tiene el inmueble objeto del contrato. Tal discrepancia debe responder a un vicio del consentimiento por error, y no, por ejemplo, a los cambios que pueda sufrir el objeto contractual debido al incumplimiento del vendedor.[5] G. García Cantero, "Artículos 1.469-1.472", en *Comentarios al Código Civil y compilaciones forales*, M. Albaladejo y S. Díaz Alabart (dirs.), 2da ed., Madrid, Revista de Derecho Privado, 1991, T. XIX, págs. 237-238, 242, 259-260 (también véase "Artículo 1.468", pág. 230, nota 6); Díez-Picazo y Gullón, *op. cit.*, Vol. II, págs. 293-294; Castán Tobeñas, *op. cit.*, pág. 114; Q. M. Scaevola, *Código Civil*, Madrid, Reus, 1970, T. XXIII, pág. 85; A. Madrid Parra, *La cabida en la compraventa de bienes inmuebles*, LVI Rev. Crit. Der. Inmobiliario 58, 65 (1983). De modo que se pretende suplir la intención de quien prestó su consentimiento pensando, erroneamente, que la cabida pactada coincidía con la cabida real del objeto contractual inmobiliario, vicio del consentimiento que se descubre, típicamente, a partir de la entrega hecha u ofrecida.

Dentro de su ámbito de aplicación, los artículos 1358-1361 desplazan las normas generales del derecho

---

[5] Aquí conviene recordar que "[e]l vendedor deberá entregar la cosa vendida en el estado en que se hallaba al perfeccionarse el contrato." Artículo 1357 del Código Civil, *supra* § 3817.

contractual.[6]   Surten, así, tres principales efectos.   En primer lugar, eliminan los requisitos generales del error que resulta capaz de afectar la validez de un contrato o sus consecuencias.   En segundo lugar, los artículos 1358-1361 hacen inaplicable las consecuencias generales del vicio del consentimiento, colocando en su lugar las normas que enumeramos más adelante.   Por último, el artículo 1361 establece un plazo de 6 meses[7] para los remedios establecidos en los artículos 1358-1360.[8]

Cabe destacar, finalmente, que los artículos 1358-1361 son de carácter dispositivo y no imperativo.   En *B & W Investment v. Soc. de Gananciales*, citamos las expresiones

---

[6] Cabe enfatizar que el referido desplazamiento ocurre sólo cuando los artículos 1358-1361 rigen la cuestión.   Por ejemplo, la doctrina no se expresa claramente sobre si los artículos 1.469-1.472 del Código Civil español aplican a otros vicios del consentimiento, en particular al dolo. Véase, e.g.: García Cantero, "Artículos 1.469-1.472 en *Comentarios al Código Civil y Compilaciones Forales*, M. Albaladejo y S. Díaz Alabart (dirs.), 2d ed., Madrid, Revista de Derecho Privado, 1991, T IX págs. 238 y 242; Díez-Picazo y Gullón, *op. cit.*, Vol. II, págs. 293-294. Así mismo, dado que los artículos 1.469-1.472 suplen la intención contractual, Díez-Picazo y Gullón sostienen que "no puede por menos de ser relevante una voluntad expresa o tácita de dar relevancia a la cabida indicada en el contrato y, por tanto, a su inexactitud." *Id.*, pág. 294. No examinos hoy tales asuntos.

[7] Los comentaristas del Código Civil español discuten si el plazo es de prescripción o caducidad, cuestión que no consideramos en esta Opinión.   *B & W Investment, supra*, a las págs. 155-156; Díez-Picazo y Gullón, *op. cit.*, Vol. II, pág. 295; García Cantero, *op. cit.*, pág. 260.

[8] La controversia de marras no exige que determinemos cuáles son los remedios sujetos al plazo.   Según García Cantero, *op. cit.*, págs. 259-260, por ejemplo, se trata de las acciones de rescisión / anulación del contrato y reducción / aumento del precio, acciones estas de carácter personal que competen a las partes o a sus herederos.

del comentarista Badenes y Gasset en cuanto a que estos artículos "pueden ser derogados por mutuo acuerdo de los contratantes, si bien el alcance de la derogación en caso de contienda será apreciado por los tribunales." 104 D.P.R., a la pág. 159 nota 3 (citando: *El Contrato de Compraventa*, 1969, T. I, pág. 555; Manresa, *Código Civil Español*, 1969, T. X, Vol. 1, pág. 246). Es preciso añadir que la facultad de modificar o eliminar la normativa de los artículos 1358-1361 cede en determinadas circunstancias ante el interés tutelado, que es la estabilidad de los contratos. *B & W Investment*, *supra*, a las págs. 157-158.

### C.

El primer párrafo del artículo 1358 dispone que la obligación de entregar el objeto vendido incluye la de poner en poder del comprador todo lo que expresa el contrato, "mediante las reglas siguientes". Luego, los artículos 1358-1360 reglamentan la discrepancia de cabida según el tipo de compraventa.[9]

Tenemos, en primer lugar, la compraventa por unidad de medida o número. Ésta surge cuando las partes han establecido el precio total como consecuencia directa de la cabida, expresando el precio de cada unidad de medida o número así como la cabida total del inmueble delimitado. García Cantero, *op. cit.*, pág. 245; Díez-Picazo y Gullón,

---

[9] A continuación se discuten las compraventas tipificadas en los artículos 1358-1361. La doctrina ha identificado otras, tales como la compraventa a medida y la compraventa sobre plano, las cuales no consideramos. Véase, e.g., Madrid Parra, *op. cit.*, págs. 108-117.

*op. cit.*, Vol II, pág. 293; Manresa, *op. cit.*, pág. 175; Madrid Parra, *op. cit.*, pág. 64-65.[10] Configurada este tipo de compraventa, las obligaciones de las partes quedan sujetas a los artículos 1358 y 1359 del Código Civil, respectivamente. Establecen dichos preceptos, en apretada síntesis, que si al vendedor le resulta imposible entregar la cabida pactada, habrá una reducción o aumento del precio, a menos que el comprador opte por rescindir el contrato debido a una merma igual o mayor de una décima parte de la cabida expresada o un aumento mayor de la vigésima parte de la cabida expresada. Puig Brutau, *op. cit.*, T. II, Vol. 2, pág. 168; Manresa, *op. cit.*, págs. 174-178.

Existe, en segundo lugar, la venta a precio alzado. En ella "el comprador se obliga a pagar determinada cantidad de dinero por toda la cabida de un inmueble que resulte existir dentro de unos linderos ya establecidos en el contrato." *Rodríguez Medina v. Pérez Torres*, res. 30 de marzo de 2005, 163 D.P.R. ___, 2005 T.S.P.R. 36, pág. 5; véase, además: *Soc. de Gananciales v. Srio. de Justicia*, 137 D.P.R. 70 (1994); *Ruidíaz Barrios v. Salas*, 103 D.P.R. 922 (1975).[11] Con respecto a las consecuencias de este

---

[10] García Cantero, *op. cit.* pág. 245, señala, siguiendo el criterio de Albaladejo, que es posible expresar la cabida implícitamente cuando se indican el precio total y el de cada unidad de medida o número.

[11] Obsérvese que la expresión de la cabida del inmueble objeto de la compraventa no impide que ésta sea a precio alzado. *Ruidíaz Barrios v. Salas*, 103 D.P.R. 922 (1975); *Soc. de Gananciales v. Srio. de Justicia*, 137 D.P.R. 70

contrato, pautadas en el artículo 1360 del Código Civil,

hemos indicado:

> [E]n la venta por precio alzado, el vendedor tiene que entregar la cosa cierta, que es la finca individualizada mediante la descripción de sus linderos. Todo lo que estos comprendan ha de ser entregado a cambio del precio convenido. El fundamento son los linderos, no un tanto por unidad de medida. Cualquier diferencia entre la cabida expresada y la que efectivamente tiene la finca, no da margen a reclamación o indemnización alguna.

*Rodríguez Medina*, supra, a la pág. 6 (citando a *Soc. de Gananciales v. Srio. de Justicia*, supra).[12]

### III.

Entre las acciones protectoras del dominio figuran la acción reivindicatoria y la de deslinde. Debemos explorar la distinción entre estas acciones y los criterios apropiados para realizar un deslinde.

### A.

Mediante la acción reivindicatoria, el propietario reclama su cosa de quien la tenga o posea. Debe

---

(1994); *Rodríguez Medina*, res. 30 de marzo de 2005, 163 D.P.R.\_\_, 2005 T.S.P.R. 36; *Velázquez Torres v. Velázquez Morales*, 82 D.P.R. 619, 630 (1961); *Colón Luna v. Batis Olivera*, 34 D.P.R. 648 (1925).

[12] Nótese que adjudicamos el recurso de epígrafe sin examinar el segundo párrafo del artículo 1360, cuya infeliz redacción ha provocado desavenencias en la doctrina y la jurisprudencia. Véase, *e.g.*: García Cantero, *op. cit.*, págs. 257-258; Díez-Picazo y Gullón, *op. cit.*, Vol. II, págs. 293-294; Castán Tobeñas, *Derecho civil español común y foral,* 12ma. ed., Madrid, Reus, T. 4, págs. 116-117; Manresa y Navarro, *Código Español Civil,* 1969, T. X, Vol. 1, págs. 182-186; Madrid Parra, *op. cit.*, págs. 98-99 y 103-104; Q. Scaevola, *Código Civil*, Madrid, Reus, 1970, T. XXIII, págs. 81 y 88; *Rosa Valentín v. Vázquez Lozada*, 103 D.P.R. 796, 803-804 (1975); *Soc. de Gananciales v. Srio. de Justicia*, supra, a la pág. 76.

identificar adecuadamente dicho objeto, probar que es suyo, y probar que está indebidamente en posesión del demandado. Artículo 280 del Código Civil, 31 L.P.R.A. § 1111; *Pérez Cruz v. Fernández*, 101 D.P.R. 365 (1973); *Arce v. Díaz*, 77 D.P.R. 624, 628-629 (1954). El segundo requisito implica que el demandante viene obligado a probar su título y no puede descansar únicamente en los vicios que tenga el título del demandado. *Castrillo v. Maldonado*, 95 D.P.R. 885, 891-892 (1968); *Meléndez v. Almodóvar*, 70 D.P.R. 527, 532 (1949). Cumplida esta obligación probatoria, corresponde al demandado señalar y probar su mejor título. *Arce v. Díaz*, 77 D.P.R. 624, 628-629 (1954) (citando a Manresa, *op. cit*, 6ta ed., Reus, 1934, T. 3, pág. 138).

En cambio, la acción de deslinde tiene el propósito de determinar los linderos confundidos de dos heredades contiguas. *Zalduondo v. Méndez*, 74 D.P.R. 637, 641-642 (1953). Es una acción disponible a "todos los propietarios cuyas propiedades limítrofes tienen confundidos sus linderos por causas naturales, accidentes fortuitos o actos voluntarios de tercero, debiendo concurrir todos a un solo juicio…" *Arce v. Díaz.*, *supra*, a las págs. 627-628; Artículo 1319 del Código Civil, 31 L.P.R.A. § 1211. La acción es imprescriptible. Artículo 1865 del Código Civil, 31 L.P.R.A. § 5295. Además, el hecho de haberse intentado o practicado una acción de deslinde no impide que se vuelva a hacer, si existen nuevas causas que lo justifiquen.

*Zayas v. Autoridad de Tierras*, 73 D.P.R. 897, 901 (1952).[13]

La distinción entre estas acciones ha suscitado varios criterios doctrinales.[14] Ahora bien, nuestra jurisprudencia establece los siguientes principios. Una sentencia reivindicatoria declara el derecho dominical del demandante y ordena que el demandado le entregue la posesión del objeto. La sentencia de deslinde, en cambio, tiene el único efecto de precisar las colindancias de determinados inmuebles. Dicha sentencia "no da ni quita derechos." *Zalduondo v. Méndez*, *supra*, a la pág. 644; *Zayas v. Autoridad de Tierras*, *supra*, a la pág. 901; *La O v. Rodríguez*, 28 D.P.R. 636, 638 (1920).[15] Por eso es que no

---

[13] Indicamos en *Zalduondo v. Méndez, 74 D.P.R. 637, 641 (1953),* que una demanda de deslinde debía alegar: (1) la descripción de la propiedad; (2) el interés que la parte reclame tener en ella; (3) el nombre de la persona en posesión de la propiedad; (4) la razón por la cual se solicita el deslinde; y (5) el requerimiento hecho a la otra parte y la negativa de ésta. Obsérvese que estos requisitos surgían de la Regla 34(b) de las derogadas Reglas de Enjuiciamiento Civil. Ahora bien, los demandantes de epígrafe han cumplido los requisitos enumerados, ello les confiere legitimación activa, y no se ha planteado que las Reglas de Procedimiento Civil de 1979 establecen requisitos distintos. Todo lo cual significa que no hay necesidad de precisar los requisitos especiales, si alguno, para solicitar el deslinde, más allá de los que surgen del Código Civil.

[14] Véase: Díez-Picazo y Gullón, *op. cit.*, v. III, págs. 242-243; V. L. Montés Penadés, "Artículos 348 y 349", en *Comentarios al Código Civil y compilaciones forales*, M. Albaladejo (dir.), 2da ed., Madrid, Revista de Derecho Privado, 1990, T. V, Vol. 1, págs. 221-226; Roca Juan, "Artículo 384", en Albaladejo (dir.), *op. cit.*, págs. 495-501.

[15] En *La O v. Rodríguez*, 28 D.P.R. 636, 638 (1920), explicamos: "El deslinde . . . no da ni quita derechos; deja intactas las cuestiones de posesión y propiedad y sólo sirve para el fin a que se dirige, esto es, para aclarar y fijar la división y límites de las heredades, evitar que se

perjudica al demandado la norma que impide litigar en el procedimiento de deslinde la prescripción adquisitiva de las partes. *Zalduondo v. Méndez*, *supra*, a la pág. 644.

Los principios expuestos revelan que la acción de deslinde tiene dos características distintivas. Una de ellas resulta evidente: el deslinde pretende individualizar los inmuebles, sin determinar, directamente, quién es su dueño. Por otro lado, en esta acción no se discute la validez ni la eficacia de los títulos, sino que se dirime su interpretación. Es en virtud de estas características que el deslinde "no da ni quita derechos". Cuando el tribunal debe examinar la validez o eficacia de los títulos, o cuando el demandante solicita la posesión que corresponde a su dominio, estamos ante una acción reivindicatoria.

Es menester señalar, por último, que las acciones de reivindicación y deslinde pueden acumularse o instarse sucesivamente. Por ejemplo, el propietario que desea recuperar un terreno de su colindante podría solicitar el deslinde para identificar precisamente el terreno.

**B.**

Los criterios apropiados para dirimir una acción de deslinde se enumeran en los artículos 320 y 321 del Código Civil. Resulta pertinente el primero de estos, que dispone, "[e]l deslinde será en conformidad con los títulos

---

confundan o desaparezcan los antiguos linderos y prevenir los pleitos que de tal confusión pudieran originarse en lo sucesivo. (citas omitidas).

de cada propietario, y a falta de títulos suficientes, por lo que resultare de la posesión en que estuvieren los colindantes." 31 L.P.R.A. § 1212.[16] Roca Juan acata el tenor literal de este precepto al explicar que se trata de una jerarquía de métodos de prueba, pues "aplicar el criterio de la posesión depende de que no haya títulos, o de que, aún habiéndolos, sean insuficientes." Roca Juan, "Artículos 385 a 387", en Albaladejo (dir.), *op. cit.*, pág. 506.

La preferencia por el deslinde según los títulos puntualiza el requisito de que sean "títulos suficientes". Se discute en la doctrina española si la palabra "suficiente" exige un documento fehaciente. Indica Roca Juan que el Tribunal Supremo español ha rechazado tal condición, exigiendo únicamente que los títulos sean "suficientemente expresivos" para fijar la colindancia. Esto significa que deben contener datos capaces de determinar el límite o área perteneciente a cada propietario. Así, la insuficiencia de los títulos podría responder a que sus datos resultan incompletos o producen colindancias que son incompatibles con las circunstancias reales del terreno. Roca Juan, "Artículos 385 a 387", *op. cit.*, pág. 506.

---

[16] El concepto título aquí utilizado incluye tanto el título obligacional como la tradición. Sin embargo, el recurso de autos no presenta una controversia genuina con respecto al segundo elemento.

**C.**

La regla de que se practicará el deslinde según los títulos luce tener más sencillez de la que tiene, pues, evidentemente, los títulos de hoy reflejan las colindancias de ayer. Y es posible que un título haga referencia expresa o tácita a linderos de diferentes clases –accidentes naturales o artificiales, edificaciones o signos, líneas imaginarias contenidas en un documento, y las múltiples modalidades de todos estos.[17] Surge así la pregunta de cuál es el tipo de lindero, identificado en un título, que será determinante del mismo.

Aquí nuestra jurisprudencia revela un criterio flexible.[18] El caso de *Sociedad de Gananciales v. Srio. de Justicia*, *supra*, ilustra el énfasis en los linderos materiales. En 1924, el titular de una finca levantó e inscribió en el Registro de la Propiedad un plano que hacía constar su cabida de 243.639 cuerdas y colindancia sur con terrenos de la Guánica Centrale. La finca tuvo otros dos titulares antes de llegar a los demandantes, en 1952, mediante una compraventa a precio alzado. Este contrato expresó que la finca contaba con 243.639 cuerdas y colindaba por el sur "con los [terrenos] de Guánica Centrale antes, hoy Departamento Forestal de Puerto Rico."

---

[17] Sobre los modos de delimitar los inmuebles, véase Roca Juan, "Artículo 384", *op. cit.*, págs. 479-480.

[18] Además de los casos discutidos a continuación, véase, por ejemplo: *Velásquez Torres v. Velásquez Morales*, 82 D.P.R. 619 (1961); *Almodóvar v. Nolla*, 85 D.P.R. 771 (1962); *Colón Luna v. Batis Olivera*, 34 D.P.R. 648 (1925); *King v. Fernández*, 30 D.P.R. 592 (1922).

Existía al perfeccionarse dicha compraventa una verja marcando la referida colindancia. No obstante, los demandantes realizaron una mensura en 1985 y descubrieron que, según la cabida expresada en el plano de 1924, la ubicación de dicha verja había causado una merma de 9.1365 cuerdas.

Trabada la controversia eventualmente como un pleito de reivindicación, el foro de instancia dio entera credibilidad al plano de 1924, con su método de mensura, y resolvió a favor de los demandantes. Al revocar, indicamos que el vendedor había entregado a los Negroni-Carlo "la totalidad del terreno incluido dentro de los lindes señalados en la compraventa…", toda vez que al perfeccionarse y consumarse el contrato, ya existía una verja marcando la colindancia. Esto significaba que el inmueble objeto de dichos negocios jurídicos estaba delimitado en el sur por una colindancia material, circunstancia que privaba a los demandantes de título con respecto a las nueve cuerdas ubicadas al otro lado de la verja.

En cambio, el recién caso de *Rodríguez Medina v. Pérez Torres*, *supra*, ilustra la importancia de los linderos ideales. Pérez Torres había comprado un solar, donde sus arrendatarios edificaron ciertas estructuras. El vendedor y colindante, Rodríguez Medina, instó una acción de reivindicación alegando que las estructuras ocupaban un terreno dentro de su inmueble, dados los linderos del solar del demandado expresados en la escritura de compraventa.

Éste respondió que había comprado un terreno cercado a precio alzado y, por ende, que era suya toda el área así delimitada. Pero el foro de instancia había determinado que las partes tuvieron la intención de realizar un negocio cuyo objeto era la finca con sus linderos instrumentales, no con los que marcaba la cerca. Por no hallar una razón suficiente para rechazar esta determinación, resolvimos a favor del demandante.

Al destacar la importancia del factor intencional, nuestro Opinión en *Rodríguez Medina* revela porque es necesario un criterio flexible con respecto a la determinación de los linderos según los títulos. La interpretación de los contratos procura determinar cuál fue la voluntad común de las partes al perfeccionarse el contrato. *Merle v. West Bend Co.*, 97 D.P.R. 403, 409-410 (1969); *Carrillo Norat v. Camejo*, 107 D.P.P. 132, 138 (1978); *Marcial Burgos v. Tome*, 144 D.P.R. 522, 537 (1997); *Unisys v. Ramallo Brothers*, 128 D.P.R. 842, 852-853 (1991); *Ramírez, Segal & Látimar v. Rojo Rigual*, 123 D.P.R. 161, 173-174 (1989). Por ende, la conexión que establece el Código Civil entre los linderos y los títulos produce una sutil reciprocidad entre ambas figuras, reciprocidad que milita contra la aplicación de reglas formales y precisas como, por ejemplo, la de que un lindero material siempre prevalece sobre un lindero inmaterial.

**IV.**

En el caso de autos, los peticionarios sostienen que procedía desestimar sumariamente la demanda incoada en su

contra, debido a que los demandantes carecen de derecho sobre el terreno que reclaman.

**A.**

Comenzamos nuestro análisis con un vistazo a los aspectos procesales de esta controversia. Al evaluar una solicitud de sentencia sumaria, o al revisar su adjudicación, la evidencia a utilizarse consiste de las declaraciones juradas y prueba documental admisible que obren en autos, así como las alegaciones no controvertidas del demandante. Los hechos que surjan sin controversia de dicha evidencia se consideran probados; los demás se consideran sólo para justificar la decisión de no dictar sentencia sumaria. Evaluada así la evidencia, el tribunal resolverá si procede dictar sentencia sumaria y, en tal caso, si la sentencia debe favorecer a la parte promovente o la opositora. Cabe recordar que se trata de un mecanismo discrecional y que ciertos litigios suelen ser inapropiados para el mismo, entre ellos los que exigen determinaciones de hechos sobre la intención de las partes. Véase, e.g.: *Asociación de Pescadores de Punta Figueras v. Marina de Puerto del Rey*, 155 D.P.R. 906 (2001); *Jusino Figueroa v. Walgreens of San Patricio*, 155 D.P.R. 560 (2001); *PFZ Properties v. Gen. Accident Insurance Co.*, 136 D.P.R. 881 (1994); *Medina Morales v. Merck, Sharp & Dhome Química de P.R.*, 135 D.P.R. 716 (1994).

Los hechos alegados y la súplica de la *Demanda* que instaron los recurridos, Ramírez-Delgado, configuran una acción de deslinde y reivindicación. Específicamente,

solicitaron que el Tribunal "[o]rdene la remoción de la verja mal colocada y la construcción de la verja en la colindancia…" *Apéndice I*, pág. 57. Exigen así que se precise la colindancia entre los solares E-5 y E-6, remedio indicativo de una acción de deslinde. No obstante, los demandantes solicitan la reubicación de una verja, sin alegar más derecho que su dominio, y los demandados han impugnado el título de los demandantes. Son estas las características de una reivindicación.

En mérito de lo anterior, procedería dictar sentencia sumaria desestimatoria si la prueba estableciera incontrovertiblemente el incumplimiento con los requisitos de las acciones de deslinde y reivindicación. Por otro lado, procedería resolver sumariamente a favor de los demandantes si la prueba estableciera incontrovertiblemente que se han configurado los requisitos de ambas acciones.

**B.**

Visto el marco procesal de este recurso, es menester precisar las controversias sustantivas a dirimir. Acabamos de indicar que la determinación impugnada debe evaluarse con miras a las acciones de deslinde y reivindicación. Con respecto al deslinde, la demanda de epígrafe cumple los requisitos pertinentes.[19] Por ende, la primera interrogante

---

[19] Específicamente, se describen los solares E-5 y E-6, se indica el interés que tienen los demandantes en dichos solares, se incluyen los nombres de quienes poseen el solar E-6, se explica que el deslinde resulta necesario debido a frecuentes disputas sobre la colindancia, y se alega que los demandados han desatendido los requerimientos de deslinde. Nada sugiere que haya controversia sobre estos

es si el terreno reclamado ubica dentro del solar E-5, suponiéndose que son válidos y eficaces los títulos de las partes.

Con respecto a la acción de reivindicación, el único de los requisitos en controversia es el de titularidad.[20] Ciertamente, la demandante Ramírez Quiñones es dueña del solar E-5. Pero sostienen los peticionarios que su título obligacional sobre los 21 metros cuadrados es inválido. Aducen que si Ramírez Quiñones aceptó una reducción del precio de su solar, en vez de exigir toda la cabida o desistir del contrato, mal puede pretender que su título obligacional incluya los 21 metros cuadrados que reclama.[21] Son los méritos de este planteamiento la segunda controversia sustantiva a dirimir.

## C.

La primera pregunta es si los 21 metros reclamados pertenecen al solar E-5. Cabe subrayar, de entrada, que el criterio para dirimir la colindancia entre los solares E-5 y E-6 --en esta etapa de los procedimientos-- es el de los títulos. El artículo 320 del Código Civil, *supra*, menciona

---

hechos.

[20] La precisa identificación del terreno es innecesaria en esta etapa de los procedimientos: basta precisar la colindancia y solicitar el deslinde. Con relación al tercer requisito, nada sugiere que los peticionarios tengan derecho a poseer el terreno disputado, a no ser que les pertenezca (por ejemplo, no son arrendatarios).

[21] Los peticionarios también alegan su mejor título --aún suponiendo que el terreno reclamado ubique dentro del solar E-5— pues lo han adquirido mediante la usucapión. Pero no han probado incontrovertiblemente los requisitos pertinentes.

dos modos de hacer el deslinde: según los títulos y según la posesión.[22]  Sin embargo, hemos visto que procede fijar los linderos según la posesión sólo cuando los títulos no son suficientemente expresivos.  Resulta inapropiado hacer tal determinación en esta etapa de los procedimientos.[23]

En virtud de lo anterior, debemos examinar si los 21 metros reclamados pertenecen al solar E-5, según los títulos.  Los peticionarios sostienen que la demandante Ramírez Quiñones sabía, al adquirir el solar, que la cabida era de 429 en vez de 450 metros cuadrados.  Citan la declaración jurada que prestó dicha demandante.  *Petición de Certiorari*, a la pág. 9.  De ello se infiere la intención de celebrar un negocio cuyo objeto fue el solar E-5 delimitado del solar E-6 por la verja hoy existente.

Sin embargo, no estamos convencidos de que las expresiones de Ramírez Quiñones revelen incontrovertiblemente una intención de limitar el alcance de su negocio jurídico a los 429 metros cuadrados, ni de que ello implique la voluntad de utilizar una verja como

---

[22] La selección del criterio es medular.  Los demandantes reclaman un terreno que alegadamente ubica en su solar.  El terreno está en posesión civil de los demandados. Específicamente, surge de los autos que, por más de un año, ha existido una verja cuyo efecto es excluir ese terreno del solar E-5 e incorporarlo al solar E-6.  Por ende, si el criterio determinante de la ubicación del terreno fuera la posesión, procedería desestimar sumariamente la demanda.

[23] El requisito aludido podría configurarse en el caso de autos.  Obsérvese, por ejemplo, que resultan contradictorios los linderos expresados en las dos escrituras de compraventa.  No obstante, la determinación de si los títulos son suficientemente expresivos podría verse afectada por la evidencia que en su día presenten las partes, dadas las interrogantes que luego identificaremos.

lindero.  La declaración jurada indica, por un lado, que existía una merma de 21 metros cuadrados en la cabida del solar, pero alude, por otro lado, a la posibilidad de reclamar contra el colindante que hubiera usurpado ese terreno.  Una interpretación coherente de tales expresiones es que contemplan la posibilidad de que una reducción en la cabida fáctica del solar hubiera alterado sus linderos jurídicos, no la certeza de ello.  Así interpretada, la declaración revela simplemente que Ramírez Quiñones asumió el riesgo y el costo de litigar la merma de cabida.

### D.

Llegamos entonces al argumento principal de los peticionarios.  Sostienen que el título obligacional de la demandante Ramírez Quiñones es inválido, con relación al terreno reclamado, porque ella recibió una reducción en el precio de compraventa proporcional a la falta de cabida.[24] Su planteamiento contiene dos premisas medulares: (1) la compraventa de la demandante está sujeta al artículo 1358; (2) éste no permite que el comprador reciba una reducción proporcional del precio y luego exija la cabida pactada de los colindantes.  Veamos.

### 1.

Conforme la prueba que consta en autos, no cabe resolver, en esta etapa, si la compraventa de la demandante

---

[24] Cabe observar que esta aseveración de los peticionarios resulta curiosa.  La reducción en cabida de 21 metros cuadrados corresponde aproximadamente a 4.67% de los 450 metros cuadrados pactados, mientras que la rebaja de $630 corresponde aproximadamente a 1.04% de los $60,455 pactados.

Ramírez Quiñones está sujeta a los artículos 1358-1361.[25] Dichos preceptos suplen la intención de quien prestó su consentimiento pensando, erróneamente, que la cabida pactada coincidía con la cabida real del objeto contractual inmobiliario. Veamos si se configuró tal situación.

Los autos no permiten la determinación de que hubo una discrepancia entre la cabida pactada y la real cabida. Estos sugieren que los solares E-5 y E-6 surgieron a la vida con 450 metros cuadrados. Véase los documentos marcados "Plot Plan", Apéndice I, págs. 72-73, y las escrituras de compraventa, *supra*. No se ha probado incontrovertiblemente que la cabida del solar E-5 hubiera variado antes de la adquisición o durante el interinato de Future Land Developers, entidad que lo vendió a Ramírez Quiñones. Esto revela la posibilidad de que los 21 metros cuadrados reclamados eran parte del solar E-5 al perfeccionarse dicha compraventa, la cual, hemos indicado, posiblemente tuvo por objeto un solar cuyos linderos incluyen ese terreno. De ser así, no habría una discrepancia entre la cabida real y la cabida pactada.

Aún si hubiera una discrepancia, los autos no permiten la determinación de que hubo error. Por un lado, la declaración jurada de Ramírez Quiñones podría interpretarse en el sentido de que ésta conocía la discrepancia al otorgar la escritura de compraventa. Por otro lado, no

---

[25] En virtud de este resultado, es innecesario examinar si el artículo aplicable a la controversia de autos sería el 1358 o el 1360.

está claro cuándo se perfeccionó el contrato de compraventa original, ni su relación jurídica con dicha escritura, ni los linderos del solar objeto de ese primer contrato, etc. Recuérdese que, según la declaración, aparentemente hubo un contrato perfeccionado con anterioridad al otorgamiento de la escritura pública. Tales interrogantes podrían afectar la determinación de si estamos ante un supuesto de error como vicio del consentimiento.

**2.**

Los peticionarios sostienen que no puede el comprador recibir una reducción del precio, conforme el artículo 1358, y luego exigir de los colindantes la cabida pactada. Arguyen, en particular, que al aceptar una reducción del precio pactado, proporcional a la falta de cabida, la demandante y recurrida pagó por 429 metros cuadrados en vez de 450 y carece, así, de un negocio jurídico obligacional que justifique la transferencia de los restantes metros. No les asiste la razón.[26]

Los peticionarios citan autoridad jurídica ninguna

---

[26] Nótese que esta tesis parte de una premisa cuyo mérito y alcance nos abstenemos de evaluar. Se aduce que Ramírez Quiñones no puede reivindicar porque recibió una reducción del precio. Esto nos da a entender que, según los peticionarios, la vendedora de Ramírez Quiñones podía instar una acción reivindicatoria. Pero los artículos 1358-1361 aplican cuando surge por error una discrepancia entre la cabida pactada y la que realmente tiene el inmueble; además, sus remedios están condicionados a que el vendedor no pueda entregar lo pactado. Por ende, los peticionarios parten de una interpretación amplia con respecto a dicha discrepancia e imposibilidad, interpretación que permite su configuración aún cuando el vendedor era dueño de todo lo que debía entregar.

para apoyar su tesis de que una reducción del precio impide la posterior acción reivindicatoria.[27]  Y es que la tarea de los artículos 1358-1361 no es hacer equidad, procurando una justa correspondencia entre lo pagado y lo recibido.  Su función es suplir la falta de intención debida al vicio del consentimiento por error.  De hecho, la normativa en cuestión es de carácter dispositivo --en vez de imperativo-- siempre que no se menoscabe el interés social en la estabilidad de los contratos.  Las circunstancias de este caso no sugieren que sería contrario a dicho interés un pacto entre Ramírez Quiñones y su vendedora mediante el cual ésta pagó $630 y aquella aceptó el riesgo y el costo de reivindicar el terreno alegadamente usurpado.

## V.

Por los fundamentos antes expresados, expedimos el auto solicitado y confirmamos la *Resolución* del Tribunal de Apelaciones.  Se devuelve el caso al Tribunal de Primera Instancia para ulteriores procedimientos consistentes con esta Opinión.

Se dictará sentencia de conformidad.


Anabelle Rodríguez Rodríguez
Juez Asociada

---

[27] De hecho, la parte demandante en el caso de *Castrillo v. Maldonado*, *supra*, había adquirido el dominio de quien había otorgado un relevo más abarcador que el de autos.  Sin embargo, no invocamos el mismo para sostener nuestra conclusión de que era improcedente la reivindicación.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Marilú Ramírez Quiñones,
Juan Feliz Delgado, *et al*

    Recurrida

        v.

                              CC-2005-598

Awilda Soto Padilla y
Ferdinand Morales

    Peticionarios

SENTENCIA

San Juan, Puerto Rico, a 14 de junio de 2006

    Por los fundamentos expresados en la Opinión que antecede los cuales se incorporan íntegramente a la presente, expedimos el auto solicitado y confirmamos la *Resolución* del Tribunal de Apelaciones. Se devuelve el caso al Tribunal de Primera Instancia para ulteriores procedimientos consistentes con esta Opinión.

    Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri concurre en el resultado sin opinión escrita. El Juez Asociado señor Rebollo López disiente sin opinión escrita. El Juez Asociado señor Rivera Pérez no intervino.

                        Aida Ileana Oquendo Graulau
                    Secretaria del Tribunal Supremo